UNITED STATES of America,
Plaintiff-Appellee,

v.

Dave Wilson ENOCH (80–5234), Kenneth
Ray Allmon (80–5259), James C. Wheeler
(80–5255), Richard Howard Love (80–
5256), Defendants-Appellants.

Nos. 80–5234, 80–5255, 80–5256
and 80–5259.

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1981.

Decided June 3, 1981.

Ross Alderman, Federal Defender Office, Nashville, Tenn., for Enoch.

Hal D. Hardin, U.S. Atty., Margaret M. Huff, Nashville, Tenn., for United States.

J. H. Reneau, III, Reneau & Reneau, Celina, Tenn., Ben Fann, Cookeville, Tenn., for Allmon and Wheeler.

Joe E. Lackey, Jr., Nashville, Tenn. (Court-appointed), for Love.

Before LIVELY and JONES, Circuit Judges, and GILMORE, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

The defendants appeal from an order denying their pretrial motion to dismiss an indictment. The sole issue on appeal is whether the double jeopardy clause of the Fifth Amendment bars defendants' retrial after the declaration of a mistrial at their request. For the reasons set forth below, we affirm.

I.

On April 11, 1980, defendants were indicted for willfully transporting, receiving,

* Honorable Horace W. Gilmore, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

and selling goods in interstate commerce, knowing that they were stolen. 18 U.S.C. §§ 2, 2314, 2315 and 371. The defendants allegedly received hundreds of cases of beer, knowing that they were stolen from Anheuser-Busch in St. Louis, Missouri. To transport the stolen beer from St. Louis, the defendants allegedly devised a scheme to commingle the contraband beer with other cases of beer scheduled for delivery by truck to Cookeville, Tennessee. After loading his truck at the Anheuser-Busch terminal, Calvin Lankford would then pick up an additional load of the contraband beer from some of the defendants. Upon arrival in Tennessee, Lankford would first stop to deliver the contraband beer to other defendants.

At trial, defendants called Ron Hoback as an expert witness. Based upon his experience as a warehouseman at a beer distributorship, Hoback testified that he could distinguish between beer pallets loaded in a truck by hand and those loaded by fork-lift. On direct examination, Hoback testified that Lankford's truck, alleged to have been unloaded and reloaded by the defendants to conceal the contraband beer, appeared to have been loaded only by forklift. The clear implication of Hoback's testimony was that Lankford's truck was loaded only once, at the Anheuser-Busch terminal in St. Louis. In response to several questions from the district court, Hoback testified that he could not remember whether he had actually inspected Lankford's loaded truck. During a recess, the district court expressed its concern that it may have substituted itself for counsel by examining Hoback.

On redirect examination of the FBI agent James Harcum, the Assistant United States Attorney made a reference to the fact that one of the defendants was represented by a "public defender." Thereafter, following a recess, and the denial of defendants' motion for a mistrial, the district court instructed the jury that the prosecutor's reference to a defense counsel as the "public defender" was an inadvertent reference to counsel's prior employment.

Finally, during the government's rebuttal argument, Assistant U. S. Attorney Wyckoff stated:

It so happened a man I met, in fact reminds me a great deal of Jim Harcum, he had been an FBI agent for some twenty five years like Jim Harcum, and one of the first men I've ever met in my life, a great human being, honest, true, the kind of man you can count on when he tells you something. You know when he looks you in the eye and tells you something it's so.

During a recess, defense counsel moved for a mistrial. The next day, the district court granted defendants' motion for a mistrial. The district court held that the above discussed incidents collectively prejudiced defendants' right to a fair trial.

## II.

As noted above, the sole issue on appeal is whether the double jeopardy clause of the Fifth Amendment bars defendants' retrial after the declaration of a mistrial at their request.

 The double jeopardy clause protects a criminal defendant's interest in a single, fair adjudication of his guilt or innocence. *United States v. Jenkins*, 420 U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975). A criminal defendant's constitutional right to have his trial completed by a particular tribunal seeks to minimize the financial and emotional burden on the accused, the period to which he is stigmatized by an unresolved accusation of wrongdoing, and the risk that an innocent defendant may be convicted. *Arizona v. Washington*, 434 U.S. 497, 503–04, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). Consequently, "a criminal defendant has a significant interest in the decision whether or not to take a case from the jury." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 253 (1971).

Ordinarily, a criminal defendant's request for a mistrial removes any constitutional barrier to retrial. *United States v. Love*, 597 F.2d 81, 86 (6th Cir. 1979); *See also, United States v. Kessler*, 530 F.2d 1246,

1254–55 (5th Cir. 1976). A retrial "protects the public's interest in fair trials designed to end in just judgments" *United States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. at 557. However, when a criminal defendant's successful request for mistrial is precipitated by "prosecutorial or judicial overreaching," a subsequent trial on the same charges is barred by the double jeopardy clause. *United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976), *quoting United States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. at 557. "Prosecutorial overreaching" is misconduct intended to "undermine the integrity of the first proceeding," thereby prejudicing the defendant. *United States v. Weaver,* 565 F.2d 129, 133 (8th Cir. 1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976). It is not necessary that the prosecutor's misconduct have the specific purpose of provoking a defendant's request for a mistrial. *Id.; but see, United States v. Nelson,* 582 F.2d 1246, 1249 (10th Cir. 1978), *cert. denied,* 439 U.S. 1079, 99 S.Ct. 860, 59 L.Ed.2d 49 (1979). In instances of "prosecutorial overreaching," the defendant's interests in a single, fair adjudication outweighs the public's interest in conducting a second trial. *U. S. v. Love, supra,* 597 F.2d at 86. Applying these principles to this case, we hold the alleged "errors" resulting in a mistrial were not intended to confer unfair advantage on the prosecution.

 The district court found that the prosecutor's reference to the cross examination conducted by the "public defender" was inadvertent[1] Nor did the district court's questioning defense witness Hoback jeopardize defendants' right to a fair trial. It is the district court's duty to see that the evidence is clear and understood. *United States v. Wade,* 364 F.2d 931 (6th Cir. 1966).

Though a prosecutor may not vouch for the credibility of witnesses, *United States v. Bess,* 593 F.2d 749, 754–55 (6th Cir. 1979); *United States v. Barker,* 553 F.2d 1013, 1024–25 (6th Cir. 1977), there is no evidence of intentional misconduct by the prosecutor. The prosecutor's remark was isolated. The record supports the district court's finding that the government's attorneys were solicitous of the defendants' rights throughout the entire proceeding.

In summary, there is no evidence that the "errors" resulting in a mistrial in this case were intentional acts designed to confer unfair advantage on the prosecution. *United States v. Love,* 597 F.2d 81 (6th Cir. 1979).

Accordingly, the district court's denial of defendants' motion to dismiss is AFFIRMED.

---

1. In response to a defense attorney's statement to the jury that he was "appointed to represent these two [defendants]," this Circuit stated:

> ... this statement constitutes highly questionable practice. Compare with the conduct of Harold R. Medina, eminent trial attorney and later Circuit Judge of the U. S. Court of Appeals for the Second Circuit. Medina was court-appointed counsel for Anthony Cramer, an alleged German saboteur, charged with treason during World War II. Feeling ran high against Medina and, among other indignities, he was spat on by a spectator. At the close of the government's case, the trial judge asked Medina to stand and then proceeded to praise him highly for his skill and vigor in defending Cramer as assigned counsel without compensation. In response, Medina immediately took exception to the court's remarks as he had not wanted the jury to think that he personally thought Cramer was guilty and was defending him only because he had been assigned by the court to do it. Medina said:
> "May it please your Honor, I have a most distressing and disagreeable task, and that is to object to the fact that you have mentioned that to this jury, and to take exception to your Honor's comment. It is something I do with the most extreme regret, but I honestly feel that my duty requires that I do it. I do not think the jury should have been told that. I have tried to keep it from them myself, and I have not mentioned it." *The Anatomy of Freedom,* Harold R. Medina, Henry Holt and Company, 1959, p. 59.

*Wiley v. Sowders,* 647 F.2d 642 at 644, n. 6 (6th Cir. 1981).