UNITED STATES of America, Plaintiff,

v.

Robert Anthony BOWDEN, Defendant.

Crim. A. No. 82–10012.

United States District Court,
M.D. Tennessee,
Columbia Division.

Dec. 8, 1982.
On Motion for New Trial Jan. 19, 1983.

James C. Thomason, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Bob Lynch, Nashville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, Senior District Judge.

Among the 14 or so pretrial motions interposed by the defendant Mr. Robert Anthony Bowden herein was a motion " * * * to suppress certain statements made by him during the [g]overnment's investigation of this case for the reason that these statements were taken in violation of [d]efendant's Fifth Amendment [constitutional] right to remain silent. In addition, [d]efendant move[d] to suppress all evidence obtained by the [g]overment as a result of statements given the [g]overnment [sic] by [d]efendant. * * * ". Rules 12(b)(3), 41(f), F.R.Crim.P. An evidentiary hearing was conducted December 6, 1982 in the hope it would enable the Court to rule thereon. Rule 12(e), F.R.Crim.P.

The Court inquired of defense counsel at the outset thereof regarding the specifics of the claimed constitutional violation and received no satisfactory explanation; while asserting that his purpose was not that of mere discovery, counsel for the defendant insisted that he was entitled to a hearing on the issue of the voluntariness of Mr. Bowden's "confession" under 18 U.S.C. § 3501(a). The prosecuting attorney represented he would offer the statements thus obtained from the defendant, not as his confession, but as incriminating out-of-court admissions.[1]

The Court heard all the evidence offered, which consisted of the testimony of Mr. Fred Moore, Jr., a special agent of the Internal Revenue Service (IRS), criminal division, and that of Mr. W.C. Barron, a certified public accountant who, at all or some of the pertinent times, served Mr. Bowden relative to accounting matters. There being not the slightest indicia whatever of any infringement of the defendant's right of silence by the IRS agents or others, the motion was summarily

OVERRULED, DENIED and STRICKEN.

The Court was disturbed by the ostensible fact that defense counsel may have advanced that motion as a defense which was unwarranted under existing law (noting judicially that such attorney is a former assistant United States attorney of this District); he asserted no claim such a defense could be supported by any good-faith argument for some extension, modification, or reversal of existing law. *Cf.* Code of Professional Responsibility, DR 7-102(A)(2). Mr. Bob Lynch, Jr., (such defense attorney), was unable to point to any matter in evidence on the hearing which suggested an inference of coercion to any degree of Mr. Bowden by IRS agents or others with reference to his client's right of silence.

The purported admissions were obtained from Mr. Bowden in a series of four interviews, the latter three of which had been arranged through his former attorney who was in attendance at all times. Two of the interviews actually took place in the office of such former attorney. The singular complaint by Mr. Lynch, Esq. was that the first interview of his client occurred so "early in the morning * * * "; the evidence was uncontradicted that such interview began about 10:30 o'clock, a.m., and continued until 2:00 or 2:30 o'clock, p.m., on September 24, 1980. Although urged insistently by the Court to advance an argument warrantable under existing law, Mr. Lynch, Esq. could not—or, certainly, did not—do so.

The existing law of self-incrimination appears to be well-settled and well-known; as the Chief Justice exemplified it fairly recently, as follows:

* * * [T]he Fifth Amendment * * * does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government

---

1. Of course, the term "confession" " * * * means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." 18 U.S.C. § 3501(e).

officials. "It does not preclude a witness from testifying voluntarily in matters which may incriminate him," * * * for "those competent and freewilled to do so may give evidence against the whole world, themselves included."

* * * Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable. In addition to guaranteeing the right to remain silent unless immunity is granted, the Fifth Amendment proscribes only self-incrimination obtained by a "genuine compulsion of testimony." * * * Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions. Accordingly, unless the record reveals some compulsion, respondent's [the defendant's] incriminating testimony cannot conflict with any constitutional guarantees of the privilege

\* \* \* \* \* \*

* * * The constitutional guarantee is only that the witness be not *compelled* [as in original] to give self-incriminating testimony. The test is, considering the totality of the circumstances, whether the free will of the witness was overborne. * * * [Citations and footnote reference omitted.] * * *

*United States v. Washington,* 431 U.S. 181, 186–188, 97 S.Ct. 1814, 1818–1819[3], [4], 52 L.Ed.2d 238 (1977). There was not one word, syllable, letter, or sign in the evidence adduced at the hearing of any circumstance whatever by means of which Mr. Bowden's free-will was overborne!

■ It is likewise well-known that, ordinarily, the mere holding of an interview does not require the giving of the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (cited by the defendant herein); such warnings are necessary only where the taxpayer is in "custody" of the IRS agents, *i.e.,*

where there is a significant restraint on his or her bodily freedom. *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 1615[1], 48 L.Ed.2d 1 (1976); *United States v. Nuth,* 605 F.2d 229, 234[1] (6th Cir.1979). " * * * It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily * * *," *United States v. Mendenhall,* 446 U.S. 544, 555–556, 100 S.Ct. 1870, 1877–1878, 64 L.Ed.2d 497, 510 (1980), *reh. den.* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); " * * * 'Any statement given freely and voluntarily without any compelling influences is,[2] of course, admissible in evidence.' * * * " *Rhode Island v. Innis,* 446 U.S. 291, 299–300, 100 S.Ct. 1682, 1688–1689, 64 L.Ed.2d 297, 307[3] (1980), quoting from *Miranda v. Arizona, supra,* 384 U.S. at 478, 86 S.Ct. at 1629.

Our local Rule 8(a)(1) required that the motion of the defendant for a suppression of evidence " * * * be signed as required by Rule 11 of the Federal Rules of Civil Procedure * * *." Mr. Lynch, Esq. signed that motion as the trial attorney for the defendant: " * * * The signature of an attorney constitutes a certificate by him that he has read the pleading; [and] that to the best of his knowledge, information, and belief there is good ground to support it * * *." Rule 11, F.R.Civ.P. " * * * The effect of Rule 11 is to place a moral obligation upon the attorney to satisfy himself that there are good grounds for the action or defense. However, the cases do not make it clear to what extent an attorney must investigate his client's case prior to signing. Questions concerning an attorney's good faith arise infrequently. * * *

" * * * Rule 11 does provide a positive standard of conduct against which to measure an attorney's behavior. For those lawyers who need reminding, this rule is in-

---

**2.** "In the absence of a clear showing that the taxpayer has been tricked or deceived by the government agents into providing incriminating information, the documents and statements ob-

tained by the Internal Revenue agents are admissible * * *." *United States v. Allen,* 522 F.2d 1229, 1233[6] (6th Cir.1975).

tended to minimize tendencies toward un-truthfulness in pressing a client's suit [or, here, defense] [footnote references omitted]. * * * * " 5 Wright & Miller 499–500: Civil § 1333.

█ Until Mr. Lynch, Esq., an officer of this Court, gave in open court his assurance of his belief that the suppression defense of Mr. Bowden was warranted by his (the attorney's) initial consideration of the circumstances surrounding the obtaining of his admissions, the Court would have proceeded without hesitation to have invoked appropriate sanctions. It is trusted that neither Mr. Lynch, Esq. nor others will need further reminder of what to expect if there is repetition of ostensibly frivolous motions which waste judicial time and energy with no gain to anyone implicated.

## MEMORANDUM OPINION AND ORDER

### On Motion For New Trial

The defendant Mr. Robert Anthony Bowden made timely a motion for a new trial, Rule 33, F.R.Crim.P., or, in the alternative, for entry of a judgment of acquittal as to count three of the indictment herein, Rule 29(c), F.R.Crim.P. The motion has no merit in either alternative.

Four of the grounds of the former motion relate to the sufficiency of the evidence to support the submission of the case to the jury and the conviction of Mr. Bowden on such count. As did the defendant by brief, the Court considers such grounds together.

1. "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title [title 26, U.S.C.] or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution. * * * " This " * * * serious and inclusive felony [is, thus,] defined to consist of [a] willful attempt in any manner to evade or defeat the tax. * * * " *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). Yet, those who attempt to limit their voluntary admissions of tax-liability to the amount owed need not be apprehensive of conviction as a criminal:

I

The jury found obviously beyond a reasonable doubt under the Court's instructions that the defendant and his (then) wife, residents of Lewisburg, Tennessee, caused to be prepared, signed and mailed or caused to be mailed on April 16, 1979 in this District, a report to the Internal Revenue Service that their joint taxable-income for the calendar-tax year, 1978, was $35,-908.23 and that due and owing thereon was tax of $7,317.44; that the defendant Mr. Bowden, in so doing, wilfully and knowingly attempted to evade and defeat $3,073.60 of the income-tax due and owing by them for that period by filing an income-tax return which was false and fraudulent, because he well knew his and his wife's joint taxable-income in that period was $42,-138.03 on which they owed an income-tax which was $3,073.60 more than they reported and paid; and, thus, that the defendant Mr. Bowden was guilty as charged in count 3 of the indictment of September 8, 1982 herein of violating the provisions of 26 U.S.C. § 7201.[1]

The prosecution claimed that Mr. and Mrs. Bowden had additional and other specific items of reportable income derived from the source of checks which they did not report and which resulted in their understating their true taxable-income for 1978. The jury was instructed *inter alia:*

In arriving at the taxable income of an individual, upon which a tax is to be imposed, the first step is to make a deter-

" * * * Sanctions to insure payment of the tax are * * * varied to meet the variety of causes of default. It is the right as well as the interest of the taxpayer to limit his admission of liability to the amount he actually owes. But the law is complicated, accounting treatment of various items raises problems of great complexity, and innocent errors are numerous, as appear from the number who make overpayments. [Footnote reference omitted.] It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care. * * * " *Ib.*, 317 U.S. at 496, 63 S.Ct. 367[2].

mination of "gross income." Gross income means all income from whatever source derived, including (but not limited to) * * * gross income derived from business * * *.

From that gross income is subtracted: such deductions as the law may allow, such as all ordinary and necessary expenses paid during the year in carrying-on a trade or business * * *.

The amount remaining is called "adjusted gross income," from which the taxpayer is permitted to deduct the standard deduction fixed by law, or such itemized deductions [allowed by law]. * * Finally, then, the taxpayer is allowed to deduct a specified amount for each qualified exemption.

The resulting figure is termed "taxable income," which is the sum to which the progressive tax-rate is applied in order to determine the amount of the income-tax.

(*See* 26 U.S.C. §§ 61 et seq.) The evidence reflected that Mr. Bowden took care to advise his accountant of all his ordinary and necessary business-expenses he paid during that year, but he withheld from this professional person certain specific items of gross-income derived from his business; thus his expenses reduced further the taxable-income he did report.

There was evidence admitted from which the jury might have found by reasonable inference additional income derived in 1978 by the defendant from the following respective sources in the following respective amounts:

| date | source | amount |
|---|---|---|
| August 18, 1978 | Bill Jordan Scrap Dealer, Inc. | $ 240.63 [2] |
| August 24, 1978 | Bill Jordan Scrap Dealer, Inc. | 418.22 [3] |
| September 28, 1978 | Heil-Quaker Corporation | 3,375.00 [4] |
| September 28, 1978 | United States Treasury (Agric Armis 54–6395, etc.) | 384.40 [5] |
| December 10, 1978 | Walker Die-Casting, Inc. | 1,811.55 [6] |
| totaling in the aggregate the sum of: | | $6,229.80 |

There was also evidence admitted from which the jury might have found beyond a reasonable doubt under such instructions by reasonable inference that the defendant Mr. Bowden, by receiving and not reporting the receipt of the foregoing specific items of reportable income derived from those sources, attempted wilfully to evade or defeat a substantial amount of the tax imposed by title 26, U.S.C., and the payment thereof. There was undisputed evidence in addition that Mr. and Mrs. Bowden's tax, had the additional income thus derived been reported timely, would have been $3,073.60 more than they reported and paid.

■ Mr. Bowden continues to argue that the variance between the amount of additional tax charged in count three of the indictment to have been due ($6,128.07) and the amount shown by the proof at trial ($3,073.60) precludes his conviction under that count. It was not necessary for the proof to have shown an attempted evasion by Mr. Bowden of the exact amount of tax alleged in the indictment so long as it demonstrated an attempt to evade a substantial amount of tax. *United States v. Warden*, 545 F.2d 32, 36[4] (7th Cir.1976); *United States v. Parr*, 509 F.2d 1381, 1385–1386[9] (5th Cir.1975); *United States v. Rischard*, 471 F.2d 105, 108[5] (8th Cir.1973); *United States v. Cole*, 463 F.2d 163, 167[2] (2d Cir.1972), *cert. den.*, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972).

■ By its verdict, the jury found the sum of $3,073.60 to have been substantial.[7]

2. *See* collective exhibit no. 42.

3. *See* collective exhibit no. 42.

4. *See* collective exhibit no. 73.

5. *See* collective exhibit no. 74.

6. *See* collective exhibit no. 62.

7. The Court instructed the jury along these lines, and it must be presumed the jury conscientiously observed these instructions. *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 367, 83 S.Ct. 448, 9 L.Ed.2d 357, 375 (headnote 22), *reh. den.*, 372 U.S. 950, 83 S.Ct. 931, 9 L.Ed.2d 975 (1963). " * * * Our theory of trial relies upon the ability of a jury to follow instructions. * * "

The Court is convinced there was no fatal variance between the charge in count three and the proof, and that there was no likelihood that Mr. Bowden was convicted of an offense other than that charged by the grand jury. *Cf. United States v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978), *cert. den.*, 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981).

## II

The defendant moved for a mistrial and claims error now on the ground *inter alia* that the Court had interrupted the cross-examination of the summary-witness, Revenue Agent Ackersly, after such examination had resulted in the disclosure of numerous instances of conceded errors therein until a summary-chart exhibited could be readjusted by the witness to reflect more accurately the claims of the prosecution of the defendant's culpability; that, after such corrections, the Court permitted the attorney for the prosecution to "re-direct" the witness thereon; and that he was prejudiced by this procedure.

The Court allowed the prosecution to present the tax-agent as its last witness, to assist the jury in understanding the tax-implications of the testimony its members had heard from the various witnesses and of the documentary evidence such members had reviewed: all to the end of making the case as clear as possible to the jury. *See United States v. Enoch*, 650 F.2d 115, 117[3] (6th Cir.1981) ("It is the district court's duty to see that the evidence is clear and understood.") *Cf.* also *United States v. Stirone*, 311 F.2d 277, 279–280[3] (3d Cir.1962) and authorities there collected (The judge should see to it that evidence helpful to an intelligent understanding of the issues is before the jury "to aid it in its deliberations.") As stated, the cross-examiner was able to elicit from this witness admissions of errors in the summary-chart he had prepared and concessions that certain items included thereon "should not have been included."

The Court refrained from any intercession in the proceedings until it was felt that the cross-examiner had had ample opportunity to gain for his client whatever favorable effect such admissions and concessions of incorrectness produced, recognizing the right of the defendant to cross-examine any witness offered against him. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110[2], 39 L.Ed.2d 347 (1974). At long last, however, it was the feeling of the Court that the witness, testifying from an error-wracked summary was confusing, rather than clarifying-for, the jury and interceded, in the exercise of judicial discretion, in the effort to inspire corrected testimony and chart. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220[5], 75 L.Ed. 624 (1931) (The trial court may exercise reasonable discretionary judgment with respect to cross-examination); *see* also *United States v. Daniels*, 528 F.2d 705, 709[9] (6th Cir.1976).

■ When the second re-direct examination of the tax-expert had been concluded, the Court allowed defense counsel full and untrammeled cross-examination of such witness, irrespective of whether such queries encompassed matters developed on the first—or the second—direct examination. There was no prejudice to the defendant in this procedural handling, and his motion for a mistrial lacked merit and was overruled properly; the defendant is not entitled to a new trial on this ground.

## III

■ The defendant objected to, and now assigns as error, the Court's restriction of counsel's final arguments to a review and discussion of the evidence. Patently, it would have been reversible error per se to have denied him an opportunity to make any closing argument at all, *Herring v. New York*, 422 U.S. 853, 858, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975). " * * * This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. *The pre-*

*Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954).

*siding judge* must be and *is given great latitude in controlling* the duration and limiting *the scope of closing summations.* [Emphases added by this writer.] * * * [H]e must have broad discretion. * * *" *Ib.*, 422 U.S. at 862, 95 S.Ct. at 2555[2]. " * * * [T]he adversary factfinding process * * *" is the crux " * * * in a criminal trial. * * *" *Ib.*, 422 U.S. at 858, 95 S.Ct. at 2553. Since the reforms in procedure from the 16th and 17th centuries, the effect has been " * * * of shifting the primary function of argument to summation of the evidence at the close of trial * * *." *Ib.*, 422 U.S. at 861, 95 S.Ct. at 2555; *accord: United States v. Morris*, 568 F.2d 396, 401[6] (5th Cir.1978) ("The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating, and applying *the evidence* [as in original]. It is not for the purpose of permitting counsel to 'testify' as an 'expert witness'.")

"It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier[s] of fact in a criminal case. * * * [C]ounsel for the parties * * * then can argue the inferences to be drawn from all the testimony * * *." *Herring v. New York, supra*, 422 U.S. at 862, 95 S.Ct. at 2555. " * * * [A] criminal trial * * * is in the end basically a factfinding process * * *." *Id.*

But, if the presiding judge permits counsel to "argue the law" in closing summations, the danger is ever-present that the jurors will hear from counsel one version or two or more versions of "what the law is" and yet another version from the trial judge. " * * * In a trial by jury in a federal court, *the judge* is not a mere moderator, but *is the governor of the trial for the purpose* of assuring its proper conduct and *of determining questions of law* [emphases added by this writer] * * *," *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 698–699[1], 77 L.Ed. 1321 (1933); and " * * * it is the duty of juries in criminal cases to take the law from the court * * *," *Sparf and Hanson v. United States*, 156 U.S. 51, 102, 15 S.Ct. 273, 293, 39 L.Ed. 343 (1895) ("[I]t cannot be regarded as the right of counsel to dispute before

the jury the law as declared by the court"); *accord: United States v. Parr-Pla*, 549 F.2d 660, 662[2] (9th Cir.1977), *cert. den.*, 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977) ("It is the duty of the court, not counsel, to advise the jury as to the law.")

As the sole expounder to the jury of the applicable law, the undersigned judge and his supporting personnel have long undertaken to determine such applicability; to prepare accurately and completely as the progress of the proceedings permits what appears to be an understandable version of it; to recheck the end-product against any special requests for instructions to the jury from all parties-litigant, Rule 30, Federal Rules of Criminal Procedure; and, after all the evidence has been heard and seen and reviewed and discussed by adversary counsel, to give the jury fairly in one voice at one sitting all the law they will utilize in making all their decisions. This serves to minimize the prospect that a juror may be confused as to "what the law is" or how that juror is to go-about performing properly the factfinding function.

" * * * Because it is the Court's function and duty to instruct the jury on the controlling law [it is] the better practice * * *, of course, * * * that any arguments of this type be limited solely toward demonstrating how the evidence, or reasonable inferences therefrom, conform to the law. * * *" *United States v. Hayes*, 479 F.Supp. 901, 919[29] (D.Puerto Rico 1979), aff'd. in part, rev'd. in part, 653 F.2d 8 (1st Cir.1981). If the Court were to permit counsel to argue the law to the jury, the chance is not insubstantial that counsel may misstate the law and cause prejudicial error. *See e.g., United States v. Segna*, 555 F.2d 226, 230–232 (9th Cir.1977), and *Graham v. United States*, 257 F.2d 724, 729–730[14] (6th Cir. 1958) (it is error for the court to allow the prosecuting attorney to misstate the law in argument to the jury).

■ This ground of the motion is wholly meritless and approximates impropriety in being thus advanced.

## IV

■ Mr. Bowden asserts error on the part of the Court in its instructions to the jury. He complains initially that the Court failed to include in its charge to the jury the following language, which was contained in his special request no. 4:

On the other hand, the defendant's conduct is not willful if you find that he *failed to file a return* [emphasis provided here] because of negligence, inadvertence, accident or reckless disregard for the requirements of the law, or due to his good faith misunderstanding of the requirements of the law.

While this was probably an accurate statement of abstract law, the failure of the Court to have so charged the jury was not error.

" * * * Instructions should be confined to the issues in the case and the facts developed by the evidence, and the fact that an instruction may be a correct statement of abstract law, does not mean it must be given where it relates to matters without the scope of the evidence. * * *" *United States v. Linn*, 438 F.2d 456, 460[10] (10th Cir.1971). Mr. Bowden was not charged herein with failing to file a tax return; instead, the indictment charged that he *had filed* returns for the years in question but that those returns were false and fraudulent.

The evidence was undisputed that Mr. Bowden filed tax returns for each of the years involved, and the failure to file a tax-return simply was not an issue. Under the issues in this case and the facts developed by the evidence, the jury could not have found that Mr. Bowden failed to file a tax return regardless of whatever any reason therefor might have been.

The instructions given by the Court emphasized to the jury the elements of *mens rea* which the prosecution was required to have proved before Mr. Bowden could be found guilty. *Inter alia,* the jurors were told that the evidence must have shown beyond a reasonable doubt that Mr. Bowden knew an additional amount of income tax was due and owing for the particular year in question and that he wilfully attempted to evade or defeat such additional tax with the specific intent to defraud the federal government of such additional tax.

These various terms were defined and explained to the jury.[8] The Court is convinced that its instructions eliminated any possibility that the jury might have found Mr. Bowden guilty " * * * because of negligence, inadvertence, accident or reckless disregard for the requirements of the law,

---

8. The jury was instructed, *inter alia:*

\* \* \* \* \* \*

An act is done "knowingly" if it is done voluntarily and intentionally, and not because of mistake, inadvertence, accident or some other innocent reason. This law, requiring someone to have acted knowingly, insures that no one will be convicted for an act done because of mistake, inadvertence, accident or some other innocent reason.

An act is done "wilfully" if it is done intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.

\* \* \* \* \* \*

Before Mr. Bowden can be found guilty under any count of this indictment, any attempt by him to evade or defeat the federal income tax must have been a wilful attempt. An attempt is wilful if it is made voluntarily and intentionally, and with the specific intent to keep from the federal government a tax imposed by the income tax laws, which it was

the legal duty of the defendant to pay to his government, and which he knew it was his duty to pay.

In other words, any attempt by Mr. Bowden to evade or defeat the income tax must have been made with the bad purpose of wilfully seeking to defraud the federal government of some substantial amount of income tax liability lawfully due from Mr. Bowden and his wife.

\* \* \* \* \* \*

If Mr. Bowden believed, in good faith, that he had paid all the taxes he owed for a particular year, he could not be guilty of attempting to evade or defeat taxes for that year.

\* \* \* \* \* \*

Before Mr. Bowden may be convicted under any count of this indictment, the evidence must have shown beyond a reasonable doubt that he knowingly and wilfully attempted to evade or defeat some substantial portion of the additional tax as charged in that count to have been owing to the federal government.

\* \* \* \* \* \*

or due to his good faith misunderstanding of the requirements of the law."

 The instruction of the Court, that, if Mr. Bowden were found beyond a reasonable doubt to have admitted perjury in giving inconsistent testimony in an earlier trial, his testimony should be received with caution and considered with great care, was appropriate herein. " * * * His admission of his earlier inconsistent testimony and his explanation of it created issues of credibility which are properly submitted to the jury. * * * " *United States v. Ross*, 322 F.2d 306, 307[1] (4th Cir.1963), *cert. den.*, 375 U.S. 970, 84 S.Ct. 490, 11 L.Ed.2d 418 (1964). Any witness testifying in any trial " * * * must testify truthfully or suffer the consequences * * * "; and this is equally true when a defendant testifies in his or her own criminal trial. *United States v. Havens*, 446 U.S. 620, 626, 100 S.Ct. 1912, 1916–1917[1, 2], 64 L.Ed.2d 559 (1980). The testimony of the defendant as an admitted perjurer became suspect because, as it was phrased by Justice Blackmun:

> We are, after all, always engaged in a search for truth in a criminal case so long as the search is surrounded with the safeguards provided by our Constitution.

*Oregon v. Haas*, 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975).

Thus, there were no harmful errors in the instructions to the jury herein, either as to those given or those requested but denied or modified and given.

Mr. Bowden, having been found guilty of the crime charged in the third count of the indictment herein by the fact-finders, upon judicial review of all the evidence in the light most favorable to the prosecution, this Court concluded as a matter of law that he is not entitled to the entry of a judgment of acquittal thereon, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789[7], 61 L.Ed.2d 560 (1979), as " * * * *any* [as in original] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* As that verdict is correct

presumptively, neither has the defendant carried his burden and demonstrated any prejudicial error on the trial herein justifying the granting to him of a new trial in the interest of justice. *See United States v. Turner*, 490 F.Supp. 583, 599[38] (D.C. Mich.1979), *cert. den.* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

For such reasons, the motion of the defendant Mr. Robert Anthony Bowden hereby is

DENIED.