UNITED STATES of America

v.

James D. NANNY.

No. 3–88–00072.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 20, 1989.

**476**

Michael P. Comodeca, Ft. Campbell, Ky., Donald Dawson, Nashville, Tenn., for James D. Nanny.

Captain Kenneth Sheets, Sp. Asst. U.S. Atty., Fort Campbell, Ky., for U.S.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Defendant James D. Nanny appeals from a jury verdict finding him guilty of driving while under the influence of an intoxicant in violation of T.C.A. § 55–10–401, as incorporated into federal law by the Assimilative Crimes Act, 18 U.S.C. § 13.

The defendant argues that the trial court committed reversible error in two ways: 1) by denying the defendant's motion to strike an alleged hearsay statement of a military police officer, who was not present at trial, to the effect that the defendant failed a portion of the field sobriety test known as the horizontal gaze nystagmus test thus violating the defendant's rights under the

Confrontation Clause of the Sixth Amendment; and 2) by failing to grant a mistrial upon the prosecutor's alleged misconduct, during closing arguments, in which the prosecutor allegedly attempted to vouch for the credibility of the government witnesses.

Prior to examining the defendant's arguments, it is necessary to closely examine the events at trial of which the defendant complains.

### FACTS

The defendant's first claim of error centers on the testimony of the Government's third witness. The Government's third witness was Ronald Eugene Bingaman, Jr., a traffic accident investigator at Fort Campbell. Bingaman testified that he was dispatched to the scene of an accident where the defendant's car was stuck on railroad tracks. Bingaman further testified that upon arrival at the scene, he and his partner approached the defendant's car. Bingaman's partner was a Sergeant Smith. Sergeant Smith was unavailable to testify at trial because he is now stationed in Germany. On direct examination, Bingaman testified that Sergeant Smith approached the defendant and gave the defendant a field sobriety test; specifically the horizontal gaze nystagmus test, and the defendant failed the test. Bingaman's testimony in this regard reads as follows:

Q. Please continue.

A. . . . Sergeant Smith then proceeded up to the driver of the vehicle. That's where Sergeant Smith noticed the odor of alcohol. . . .

Sergeant Smith did proceed to give him one field sobriety test, which is the horizontal gaze and nystagmus test, which I observed him giving.

Q. Did the Defendant pass or fail?

A. He failed it.

(Trial Transcript, Testimony of Ronald Eugene Bingaman, Jr., at 101–102).

During cross-examination, Bingaman further testified:

Q. Mr. Bingaman, you started by saying that you observed the gaze and nystagmus test that was performed as to Mr. Nanny?

A. Yes, I did, sir.

Q. You did not give the test, though, correct?

A. No, sir.

Q. Where were you standing when that test was given?

A. I was standing on the driver's side, outside the door that was open towards the front of the car.

Q. Where was Mr. Nanny?

A. He was in the driver's side of the car.

Q. Were you in front of him, beside of him, behind him?

A. I was in front of him.

Q. In front of him?

A. In front and to his left.

Q. And how far away?

A. Approximately five to seven feet from him.

Q. And it was dark?

A. Yes, it was.

Q. It was very dark?

A. Yes, it was.

Q. And the—what did Sergeant Smith use to do the gaze and nystagmus test?

A. I believe he used a tip of a pen.

Q. And am I not correct that the way that test works is that you have the individual follow the tip of the pen with his eyes?

A. Correct. Correct.

Q. And where the nystagmus starts is some indication as to whether someone is under the influence of alcohol; correct?

A. Correct.

Q. And if you get to around forty to forty-five degrees, then the nystagmus starts on most people's eyes, whether they are sober or never had anything to drink in their life?

A. Correct. Correct.

\*     \*     \*     \*     \*     \*

Q. And you did not actually see when the nystagmus began or when the onset took place as to Mr. Nanny?

A. No, I didn't sir.

478

Q. So you don't know whether Mr. Nanny failed or passed the gaze and nystagmus test of your own personal knowledge; is that true?

A. That's true, sir.

(Trial Transcript, Testimony of Ronald Eugene Bingaman, Jr., at pp. 106–109).

At this point in the trial the defendant's lawyer approached the bench and moved to strike Bingaman's testimony that the defendant failed the horizontal gaze nystagmus test because it was based solely upon hearsay. The Court denied the defendant's motion, stating that the statement was that of an agent within the scope of his employment and thus fell within an exception to the hearsay rule.

The defendant's next claim of error stems from remarks made by the prosecutor during closing arguments and rebuttal.

During closing argument the prosecutor made the following remarks:

*Unbiased* Military Police Officers said they assisted him out of his vehicle.... Next at the police department itself, at the Military Police Department, you have testimony again from *three very, very competent, very professional Military Police Officers*, who observed the defendant in an intoxicated state.... *They had no reason to lie* about what they had witnessed. [The defendant] told you he had three drinks. Did he have more? Is there something else? No one knows but the defendant and the Military Police Officers, the *unbiased* Military Police Officers that were there, the *unbiased professional MPs* were there observing the defendant.... *I am representing the Government ... I tell you, we have three very, very unbiased Military Police Officers, who have nothing to lose*, who told you all today that yes, the defendant was under the influence.

(Trial transcript, closing argument of Mr. Rigsby at pp. 262–264) (emphasis added).

Later in the rebuttal, the following exchange occurred:

Obviously, the State of Tennessee deems it [the Intoximeter 3000 breathalizer] professional enough for their law enforcement agents to use; the Govern-ment does also. The United States Army subscribes to the same thoughts, the same expertise.

*This is important. When Mr. Dawson* [the defendant's attorney] *attacked the credibility of the Military Police Officers of the United States Government, I am a United States Army Officer, I represent the Government, and you attack the—*

MR. DAWSON: Objection, Your Honor, —(simultaneous conversation)

MR. DAWSON:—that I was out of line in the Government—he can't argue that because he is the Government they are right.

MR. RIGSBY: I an not trying to argue that, Your Honor. He has established the fact that I am a United States Army Captain, Your Honor.

THE COURT: I don't want to get into argument with respect to Counsel who are not witnesses.

MR. RIGSBY: The credibility of the United States police officers is at issue here.

*Military Police Officers are unbiased.*

MR. DAWSON: Objection, Your Honor. There is no evidence of the unbias of Military Police Officers in this case. There's no evidence about training Military Police Officers that makes them any different than any other witness in the case.

THE COURT: I sustain the objection.

MR. RIGSBY: Your Honor, could I have a side bar?

THE COURT: All right.

(Trial testimony, rebuttal by Mr. Rigsby at pp. 279–280) (emphasis added).

During the side bar the following conversation took place:

MR. RIGSBY: He attacked the credibility of Military Police Officers. This is more or less just to rehabilitate in front of them. He started and we opened the door, and there is no basis for showing them in any way. That's all this is going to.

MR. DAWSON: You can't go outside the evidence to do that, though. You can't

make some speech about because I am in the FBI or DBA that that makes me magically truthful.

THE COURT: I think you need to show you are an employee or one of the employees that they used to be referred to as an indicator of bias is fair for one party or another. I think there is no factual basis. There is always a factual basis for saying that because you are an employee of a party that you have some interest in that party. That's a sufficient argument.

MR. RIGSBY: Are you ruling against me? I can't say that the integrity is not at issue?

THE COURT: I am not saying you can't argue that, but I would say there is no basis for saying that. If you are a party, you are a party.

MR. RIGSBY: You can't show our biases as the Military Police Officers. When you attack our credibility you attacked earlier today, you can't implant that into their minds, sir.

THE COURT: I think he should be allowed to point out that if somebody is an agent of the Government who is a prosecuting official, he is no different from a police officer. You can make any argument you want to with respect to their status, but I think there is a status for a factual basis for citing an employment relationship as a basis for bias.

MR. RIGSBY: Am I allowed to talk about the credibility?

THE COURT: Yes, you are allowed to talk to the credibility.

MR. RIGSBY: He is arguing for that issue.

THE COURT: I said I ruled on that case.

MR. RIGSBY: Yes, sir.

MR. DAWSON: Due to Mr. Rigsby's statements that he is in the Army and, therefore, they are in the Army, the Defendant moves for a mistrial, finding that to be extremely argumentative and injurious to the defense.

THE COURT: I overrule that argument. And I'll instruct the Jury.

(Bench conference ends.)

(Trial testimony, rebuttal by Mr. Rigsby at pp. 280–282).

The Magistrate then addressed the jury:

THE COURT: Ladies and Gentlemen of the Jury, I'll instruct you in a minute. The credibility of all witnesses is subject to being challenged and given a factual coloring for credibility. Before the law all persons are equal.

I further want to advise you, however, that none of the lawyers in this case are witnesses. So that the credibility of any lawyer, even if he is affiliated with the Government, is not an issue that is properly for your consideration, only the credibility of the witnesses. You may argue.

(Trial testimony, rebuttal of Mr. Rigsby at pp. 282–283).

## DISCUSSION

### A. *Defendant's Hearsay and Confrontation Clause Violation Claims*

#### 1. *Hearsay*

The defendant argues that the Court erred by denying the defendant's motion to strike the statement of Bingaman that the defendant failed the field sobriety test. The defendant argues that allowing this statement into evidence was an error for two reasons: 1) because the statement was hearsay testimony; and 2) because the admission of the testimony violated rights guaranteed by the Confrontation Clause of the Sixth Amendment of the Constitution of the United States of America.

■ Bingaman testified that the defendant had failed the horizontal gaze nystagmus field sobriety test. The horizonal gaze nystagmus test is administered by holding a pen, or similar object, in front of the suspect's face and by instructing the suspect to follow the tip of the instrument with his or her eyes. Where nystagmus [1] begins serves as an indication of whether the individual is under the influence of alcohol. However, once the instrument is moved to about forty or forty-five degrees then nystagmus begins on most people's

---

1. Nystagmus is essentially a rhythmic oscilla-  tion or rapid movement of the eyes.

eyes whether they are under the influence of alcohol or sober. (Testimony of Ronald Eugene Bingaman, Jr., at pp. 107–108).

Thus, in order to determine whether or not an individual passes the horizontal gaze nystagmus test, it is necessary to be close enough to see the onset of nystagmus. Bingaman testified that when his partner gave the defendant the test that he (Bingaman) was "approximately five to seven feet" "in front and to the left" of the defendant and that it was very dark out. (Testimony of Ronald Eugene Bingaman, Jr., at p. 107). It would not have been possible for Bingaman to see the onset of nystagmus much less to determine whether the defendant failed the horizontal gaze nystagmus test. Indeed, Bingaman testified that he did not see the onset of nystagmus. Bingaman also testified that he did not know of his own personal knowledge, whether the defendant had failed or passed the horizontal gaze test. Despite his lack of personal knowledge, Bingaman testified that the defendant had failed the test.

Hearsay is an out-of-court statement admitted to prove the truth of the matter asserted. Because Bingaman had no personal knowledge of the results of the horizontal gaze nystagmus test, he was essentially testifying that Sergeant Smith told him that the defendant flunked the test. Sergeant Smith's statement was an out-of-court statement and was offered to prove the truth of the matter—that the defendant was driving under the influence of alcohol. Therefore, Bingaman's testimony that the defendant failed the horizontal gaze nystagmus test is hearsay.

■ Rule 802 of the Federal Rules of Evidence provides that hearsay is not admissible except as otherwise provided for in the Federal Rules of Evidence. Therefore, unless an exception to the hearsay rule can be found, it was an error for the court not to strike Bingaman's testimony regarding the defendant's failure of the horizontal gaze nystagmus test.

In ruling that the court would not strike Bingaman's testimony, the Magistrate stated that the testimony fell within the "statement of an agent within the scope of his employment" exception to the hearsay evidence rule. This Court cannot find such an exception within the Federal Rules of Evidence. The rule which best encompasses the trial court's exception is Rule 803(8) which covers public records and reports.

Rule 803(8) provides in part:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report.

If this were the end of Rule 803(8), this Court might be able to overlook the facts that Bingaman's testimony was not a record, report, statement or data compilation, but rather was Bingaman's recollection of what Sergeant Smith told him. Similarly, this Court might be able to overlook the fact that Bingaman did not really observe the defendant failing the horizontal gaze nystagmus test. The Court cannot, however, ignore the plain caveat at the end of Rule 803(8). This caveat specifically excludes, in criminal cases, the admission of hearsay testimony in records, reports, statements, or data compilations of matters observed by police officers and other law enforcement personnel.

■ In its brief [2] the Government contends that the testimony of Bingaman is not hearsay because it falls within the "Present sense impression" exception of Federal Rule of Evidence 803(1).

Rule 803(1) defines a "Present sense impression" as:

A statement describing or explaining an event or condition made while the defendant was perceiving the event or condition, or immediately thereafter.

Sergeant Smith's alleged statement that the defendant failed the horizontal gaze nystagmus test is a statement describing

**2.** The Court notes that after opposing the defendant's motion for an extension of time in which to submit appellant's brief, the Government twice moved for extensions of time in which to file its own brief. The last extension of time gave the Government until November 1, 1989 to file its brief. The Government missed this deadline, finally filing its brief on November 6, 1989.

or explaining an event. However, there is no record evidence as to when Sergeant Smith's statement was made. On direct, the prosecution established that Sergeant Smith gave the horizontal gaze nystagmus test to the defendant. In addition, Bingaman testified that the defendant failed the test. On cross-examination, however, Bingaman testified that he had no personal knowledge of whether the defendant failed the test or not. There was no testimony to establish that Sergeant Smith made the statement that the defendant failed the test contemporaneously with, or even immediately after, the administration of the test. Therefore, the statement of Sergeant Smith does not fall within Rule 803(1).

The testimony of Bingaman that the defendant failed the horizontal gaze nystagmus test was hearsay, not falling within an exception to the heresy rule, and thus should have been stricken as inadmissible.

## 2. *Confrontation Clause*

■ The hearsay rules of the Federal Rules of Evidence were drafted with a view to preventing violations of the Confrontation Clause in connection with the introduction of out-of-court statements of persons not available as witnesses. Federal Procedure Lawyer's Edition, § 22:814. The Confrontation Clause guarantees the defendant a face-to-face meeting and the right to cross-examine any individual who testifies against the defendant. *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985); and *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In the present case, the defendant was denied an opportunity to both meet and cross-examine his accuser (Sergeant Smith). Thus, the defendant's Sixth Amendment Confrontation Clause right was violated when Bingaman testified essentially as to what Sergeant Smith told him.

## 3. *Harmless Error Analysis*

■ After determining that hearsay testimony was wrongfully admitted and that the defendant's Sixth Amendment rights were violated, it is necessary to determine whether these errors warrant reversal of the defendant's conviction or whether they are excusable as harmless error.

The Constitution entitles a criminal defendant to a fair trial, not a perfect trial. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that, depending upon the context of the case, certain constitutional errors, no less than other errors, may have been "harmless" in terms of their effect on the factfinding process at trial. The Supreme Court has repeatedly stated that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This is because the harmless error doctrine recognizes that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. *Delaware v. Van Arsdall*, 106 S.Ct. at 1436.

A number of factors go into the determination of whether an error is harmless. These factors include: the importance of the witness' testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; the extent of cross-examination otherwise permitted; and the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The burden is on the Government to demonstrate that the illegally admitted evidence was harmless error. *Chapman v. State of California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("certainly error, constitutional error, in illegally admitting highly preju-

dicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless.").

The Government relies on *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), to support its contention that the wrongful admission of the statement by Sergeant Smith, that the defendant failed the horizontal gaze nystagmus test, was mere harmless error.

The Supreme Court in *Lutwak stated that:*

> In view of the fact that this record fairly shrieks the guilt of the parties, we cannot conceive how this one admission could have possibly influenced this jury to reach an improper verdict. A defendant is entitled to a fair trial but not a perfect one.

344 U.S. at 619, 73 S.Ct. at 490.

The Government contends that the record "fairly shrieks" of the guilt of the defendant and that, therefore, the wrongful admission of hearsay should be mere harmless error.

The proper harmless error analysis is an examination of the elements stated in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

### a. The Importance of the Witness' Testimony in the Prosecution's Case

Three police officers testified that, in their opinion, the defendant was intoxicated. All three officers noticed a strong odor of alcohol emitting from the defendant, his eyes were bloodshot, he was very talkative, and overly polite. (Trial Transcript, Allen, Bingaman, Echots at pp. 32; 103; 104; 106; and 151 respectively). In addition, the Government also entered evidence that upon taking an Intoximeter 3000 test the defendant registered a .16% blood alcohol content. The presumption of intoxication arises at .10% blood alcohol content. The testimony that the defendant failed the horizontal gaze nystagmus test is but one prong of three upon which the prosecution's case rested. It is not a crucial part of the prosecution's case, but it is, nonetheless, an important element of the prosecution's case.

### b. Whether the Testimony was Cumulative

The statement of Sergeant Smith, to which Bingaman testified, was cumulative to other evidence addressing the ultimate issue—whether the defendant was intoxicated. However, Sergeant Smith's statement was not cumulative to any other evidence as to whether the defendant failed the horizontal gaze nystagmus test. In fact, Sergeant Smith's statement is the only evidence as to whether the defendant failed the test.

### c. Presence or Absence of Evidence Corroborating or Contradicting the Witness' Testimony

Other than Sergeant Smith's statement, there was no other evidence concerning whether the defendant failed the horizontal gaze nystagmus test.

### d. The Overall Strength of the Prosecutor's Case

As mentioned above, the prosecutor's case was strong. Three witnesses testified that they believed that the defendant was intoxicated. Additionally, the defendant failed an Intoximeter 3000 test. The prosecution's case rested on three prongs: failure of the horizontal gaze nystagmus test; the physical and mental attributes of intoxication ascribed to the defendant by three police officers; and failure of a breath alcohol test given through the Intoximeter 3000. Because the wrongfully admitted hearsay evidence went only to one prong of the prosecution's case, this Court finds that a balancing of these factors demonstrates that the admission of the hearsay testimony was harmless error. Accordingly, the Court DENIES the defendant's motion for a mistrial based upon the wrongful admission of hearsay testimony in violation of the defendant's Sixth Amendment right.

### B. Defendant's Prosecutorial Misconduct Claim

The defendant claims that the action, during closing argument, of the prose-

cutor in attempting to vouch for the credibility of the Military Police Officers, and in using the personal authority of the United States prosecutor, warranted the declaration of a mistrial. The defendant further contends that the failure of the trial court to grant the defendant's motion for a mistrial is reversible error.

The defendant argues that the prosecutor's characterization of the Military Police Officers as "unbiased" was a wrongful attempt to vouch for the credibility of the Government's witnesses. The prosecutor stated that the Military Police Officers were "unbiased" four times. (Trial Transcript at pp. 262, 263, 264 and 280). The prosecutor stated that the Military Police Officers were "very, very unbiased." (Trial Transcript at p. 264). In addition, the prosecutor characterized the Military Police Officers as "very, very confident, very professional" who had "no reason to lie." (Trial Transcript, closing argument of Mr. Rigsby at pp. 262–264).

Not only did the prosecutor attempt to vouch for the credibility of the Government's witnesses, but he also attempted to invoke the name of the United States Government to show that the Government's witnesses were unbiased.

The prosecutor stated:
I am representing the Government ... I tell you, we have three very, very unbiased Military Police Officers, who have nothing to lose, who told you all day today that yes, the defendant was under the influence.
(Trial Transcript, closing argument of Mr. Rigsby at p. 264).

The prosecutor also stated:
This is important. When Mr. Dawson [the defendant's attorney] attacked the credibility of the Military Police Officers of the United States Government, I am a United States Army Officer, I represent the Government. . . .
(Trial Transcript, rebuttal of Mr. Rigsby at p. 280).

The import of the prosecutor's argument was to use his authority to link the credibility of the Government's witnesses, who are government employees, with the prosecutor's own credibility since he is also a government employee. By prefacing his remarks by saying "This is important" the prosecutor drew the jury's attention specifically to the unfortunate remarks that followed.

These statements are both prejudicial and inexcusable. A prosecutor must seek to convict, but a prosecutor must not go outside the bounds dictated by fair play and justice. The Supreme Court addressed this very issue of the responsibility of the prosecutor in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

The foul blows struck by the prosecutor were those in which the prosecutor used his official position as a member of the United States Government, as well as his personal authority, to vouch for the credibility of the Government's witnesses.

In *United States v. Bess*, 593 F.2d 749 (6th Cir.1979), the Sixth Circuit Court of Appeals clearly held that the personal opinion of counsel have no place at trial. Similarly, in *United States v. Enoch*, 650 F.2d 115 (6th Cir.1981), the Sixth Circuit Court of Appeals stated that a prosecutor may not vouch for the credibility of a witness.

In addition to case law prohibitions against counsel offering their personal

opinion at trial, there are several ethical prescriptions.

The American Bar Association's Model Code of Professional Responsibility specifically provides that:

> In appearing in his professional capacity before a tribunal, *a lawyer shall not:*
>
> \* \* \* \* \* \*
>
> (4) *Assert his personal opinion* as to the justness of a cause, *as to the credibility of a witness,* as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

(DR 7–106(C)(4)) (emphasis added).

Similarly, the American Bar Association's Model Rules of Professional Conduct provide that:

> *A lawyer shall not:*
>
> \* \* \* \* \* \*
>
> (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, of *state a personal opinion as to* the justness of a cause, *the credibility of a witness,* the culpability of a civil litigant or the guilt or innocence of an accused....

(Rule 3.4(e)) (emphasis added).

Finally, the American Bar Association's Standards for Criminal Justice provide:

> *It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony* or evidence or the guilt of the defendant.

(Standard 3–5.8(b)) (emphasis added).

No evidence was admitted to demonstrate that Military Police Officers in general, nor the three Military Police Officers who served as the Government's witnesses in specific, were unbiased. Thus, the prosecutor must have been offering his own personal opinion as to their credibility. This is impermissible under any ethical code.

In *United States v. Enoch,* a mistrial was declared after the Assistant United States Attorney attempted to vouch for the credibility of a Government witness by saying the following:

> It so happened a man I met, in fact reminds me a great deal of Jim Harcum, he had been an FBI agent for some twenty-five years like Jim Harcum, and one of the first men I've ever met in my life, a great human being, honest, true, the kind of man you can count on when he tells you something. You know when he looks you in the eye and tells you something it's so.

650 F.2d at 116.

In the present case, the comments made by the prosecutor are at least as prejudicial as those made by the Assistant United States Attorney in *United States v. Enoch.*

The Government argues that a finding of prejudicial error is required to find reversible error based on the prosecutor's behavior, when there is an "invited response or invited reply." *United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985).

The Government further argues that the "record of trial reflects that the response by the prosecutor was permitted by the closing argument of defense counsel." (Brief of Plaintiff–Appellee at 7). However, even the most cursory of glances at the record reveals the opposite. The prosecutor was the first party to give closing argument. (Trial Transcript at 258). Then the defense counsel gave his closing argument. (Trial Transcript at 265). And finally, the prosecutor gave his rebuttal. (Trial Transcript at 278). It was during his rebuttal that the prosecutor made the remarks to which the defendant objected. It is true that during the defendant's closing argument, the defendant's counsel argued that the Military Police Officers testifying against the defendant were not unbiased. However, this was done solely because of, and in response to, the remarks of the prosecutor made during the prosecutor's closing argument in which the prosecutor asserted several times that the Military Police Officers were unbiased.

This Court agrees with the trial judge that it is always fair to suggest that the employees of one of the parties is biased. In addition, it was the argument of the prosecutor which justified the defense counsel's argument—not the other way around.

The prosecutor's statements were highly prejudicial and were not "invited responses or invited replies."

After the defendant objected, the court issued the following admonishment:

> Ladies and Gentlemen of the Jury, I'll instruct you in a minute. The credibility of all witnesses is subject to being challenged and given a factual coloring for credibility. Before the law all persons are equal.
>
> I further want to advise you, however, that none of the lawyers in this case are witnesses. So that the credibility of any lawyer, even if he is affiliated with the Government, is not an issue that is properly for your consideration, only the credibility of the witnesses.

(Trial Transcript at 281).

This attempt to cure the prosecutor's misconduct is plainly insufficient. The trial judge should have declared a mistrial.

The prosecutor's misconduct during closing argument, when combined with the wrongfully admitted hearsay evidence, collectively prejudiced the defendant's right to a fair trial.

The judge's instruction to the jury were not adequate to cure the highly prejudicial comments by the prosecutor.

For the reasons stated above, this Court hereby GRANTS the defendant's motion for a mistrial.