# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### JANUARY 1999 SESSION

FILED

July 20, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **JERRY LEE CRAIGMIRE** | * | C.C.A. No. 03C01-9710-CR-00440 |
| Appellant, | * | KNOX COUNTY |
| vs. | * | Hon. Richard Baumgartner, Judge |
| **STATE OF TENNESSEE,** | * | (Post-Conviction) |
| Appellee. | * | |

For Appellant:

Mark E. Stephens
District Public Defender
1209 Euclid Avenue
Knoxville, TN 37921

Paula R. Voss
Assistant Public Defender
1209 Euclid Avenue
Knoxville, TN 37921

John Halstead
Assistant Public Defender
1209 Euclid Avenue
Knoxville, TN 37921

For Appellee:

John Knox Walkup
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN 37243-0493

Elizabeth B. Marney
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

Robert Jolley
Assistant District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

AFFIRMED

NORMA MCGEE OGLE, JUDGE

## OPINION

The petitioner, Jerry Lee Craigmire, appeals the Knox County Criminal Court's dismissal of his petition for post-conviction relief. On appeal, the petitioner raises the following issues for our review:

1. Whether his conviction as an habitual offender violated the doctrine of collateral estoppel.

2. Whether the trial court's instructions to the jury at the conclusion of the petitioner's habitual criminal trial shifted the burden of proof to the petitioner, thereby violating his right to due process.

3. Whether the actions of the trial court and the prosecutor during closing arguments in the petitioner's habitual criminal trial denied the petitioner the effective assistance of counsel, due process, and a fair trial.

4. Whether the petitioner's counsel was ineffective at trial and on direct appeal in failing to raise the issues relating to collateral estoppel and the petitioner's closing argument.

Following a thorough review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

## I. Factual Background

On November 16, 1987, a Knox County jury found the petitioner guilty of one count of larceny and one count of receiving stolen property. The petitioner's convictions arose from his theft of a woman's purse and his contemporaneous possession of a stolen car. These convictions were the triggering offenses underlying the prosecution of two counts of the petitioner's indictment, charging him with being an habitual criminal. The jury acquitted the petitioner of being an habitual criminal with respect to the larceny conviction. With respect to the petitioner's conviction for receiving stolen property, the jury was unable to reach a verdict, and the court declared a mistrial. Following a second

2

mistrial, a jury finally returned a guilty verdict on February 8, 1989.[1]  In accordance with the habitual

criminal statutes, the petitioner received a sentence of life imprisonment in the Tennessee Department

of Correction for the offense of receiving stolen property.

At the petitioner's February 8, 1989, habitual criminal trial, the State introduced into

evidence indictments and judgments of conviction reflecting that, in addition to the triggering offense of

receiving stolen property, Jerry Lee Craigmire had previously been convicted on March 18, 1982, of

attempting to pass a forged prescription on a day in January, 1981, and receiving stolen property on

January 2, 1981.  The indictments and judgments also reflected that, on March 18, 1982, Jerry Lee

Craigmire had been convicted of the following offenses pursuant to his pleas of guilt: receiving stolen

property in February, 1981; receiving stolen property and second degree burglary in April, 1981; two

counts of receiving stolen property and two counts of second degree burglary in May, 1981; three

counts of second degree burglary and one count of the sale of credit cards by a person other than the

issuer or issuee in June, 1981; and one count of first degree burglary in October, 1981.  For these

offenses, the petitioner had received an effective sentence of eleven to twenty-five years incarceration

in the Tennessee Department of Correction.  The State additionally introduced the testimony of

Charles Coleman, a Lieutenant with the Knoxville Police Department, who testified that the petitioner

was the same Jerry Lee Craigmire who had committed the triggering offense and the fourteen prior

offenses.  The petitioner presented no proof.  The record reflects that the jury returned a verdict of guilt

following three minutes of deliberation.

On direct appeal, the petitioner challenged the sufficiency of the evidence supporting

his conviction for receiving stolen property; the adequacy of the jury's verdict of guilt as stated by the

jury foreman; and, with respect to the petitioner's conviction of the habitual criminal charge, the trial

_____

[1]The record reflects that the Honorable John J. Duncan, Judge, presided over the petitioner's trial for the substantive offenses and the petitioner's first three habitual criminal trials.  The Honorable Randall E. Nichols, Judge, conducted the petitioner's final habitual criminal trial, which resulted in his conviction.

court's failure to grant a continuance to the petitioner based upon the State's failure to provide a written list of predicate convictions in advance of trial. This court affirmed the petitioner's convictions. State v. Craigmire, No. 1262, 1990 WL 29736 (Tenn. Crim. App. at Knoxville, March 22, 1990).

On June 5, 1991, the petitioner filed a petition for post-conviction relief. On June 17, 1991, the post-conviction court appointed the public defender to represent the petitioner, and the petitioner submitted an amended petition. The post-conviction court conducted a hearing on July 23 and 25, 1997. At the hearing, the petitioner asserted numerous grounds for relief, including the following:

1.  Whether the petitioner's habitual criminal conviction violated the doctrine of collateral estoppel.

2.  Whether the trial court's instructions to the jury during the petitioner's habitual criminal trial shifted the burden of proof to the petitioner, violating his right to due process.

3.  Whether the prosecutor engaged in misconduct during the petitioner's habitual criminal trial by objecting during the petitioner's closing argument that the "jury has no right to ignore the law ... ."

4.  Whether the trial court erroneously restricted the petitioner's closing argument in the habitual criminal trial, denying the petitioner due process of law.

5.  Whether the petitioner's counsel was ineffective at trial and on direct appeal.

At the hearing, the petitioner testified. He conceded that his criminal record included the fourteen prior convictions upon which the State relied in the habitual criminal proceedings. He further testified that the parties presented the same evidence and the same arguments in both habitual criminal proceedings. Additionally, the post-conviction court questioned the petitioner's trial counsel, Byron Bryant, concerning his closing argument in the petitioner's final habitual criminal trial. Mr. Bryant testified that, during closing argument, he attempted to argue that the habitual criminal statutes should not apply in the petitioner's case. The trial court prohibited Mr. Bryant from engaging in this argument

4

and threatened to hold Mr. Bryant in contempt of court if he persisted.

Mr. Bryant conceded that he did not challenge on direct appeal the trial court's limitations upon his closing argument or challenge the petitioner's habitual criminal conviction on the basis of double jeopardy. He explained that his legal research revealed several Tennessee Supreme Court cases which were directly contrary to those arguments. He concluded, "I did the best I could."

At the conclusion of the hearing, the post-conviction court made the following observations:

> [I]t is pretty clear to me from this argument that this is not an ineffective assistance of counsel. ... Mr. Bryant did everything he could humanly do. He raised all these issues that you have raised, made all those arguments to the Court, and did them forcefully.

Subsequently, on September 5, 1997, the post-conviction court dismissed the petition for post-conviction relief. In a memorandum opinion, the court again concluded that the petitioner had received competent representation and additionally concluded that the trial court's limitations upon the petitioner's closing argument in his habitual criminal trial did not constitute a denial of due process.

## II. Analysis

### A.    Collateral Estoppel

The petitioner first contends that his habitual criminal conviction violates the doctrine of collateral estoppel. The petitioner did not raise this issue on direct appeal, thereby waiving the issue. Post-conviction relief is generally not available to litigate issues that have been waived. Tenn. Code. Ann. § 40-30-111 (1991). However, the petitioner also argues that his attorney was ineffective on direct appeal in failing to raise this issue. In this context, we must determine whether appellate counsel's failure to raise this issue was below the range of competence demanded of attorneys in criminal cases, Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), and whether this failure was prejudicial. Strickland v. Washington, 466 U.S. 668, 687-697, 104 S.Ct. 2052, 2064-2069 (1984). See

also Powers v. State, 942 S.W.2d 551, 557 (Tenn. Code. Ann. 1996). Because the petitioner must establish both ineffective performance *and* prejudice in order to prevail on a claim of ineffective assistance of counsel, we need not evaluate counsel's performance if the petitioner has not established prejudice. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997), cert. denied, __ U.S. __, 119 S.Ct. 82 (1998). In order to ascertain if appellate counsel's performance was prejudicial, we must address the merits of the issue neglected on appeal.[2]

Citing Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189 (1970), the petitioner argues that principles of collateral estoppel precluded his conviction as an habitual criminal in this case. In essence, the petitioner asserts that, when the jury acquitted the petitioner of the habitual criminal charge relating to his larceny conviction, the jury necessarily decided the issue of the petitioner's habitual criminal status with respect to the conviction for receiving stolen property.

In Ashe, 397 U.S. at 445-446, 90 S.Ct. at 1195, the United States Supreme Court held that the doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. State v. Vickers, 985 S.W.2d 1, 7 (Tenn. Crim. App. 1997), perm. to appeal denied, (Tenn. 1998); State v. McKennon, No. 01C01-9710-CC-00456, 1998 WL 849287, at **2-4 (Tenn. Crim. App. at Nashville, December 3, 1998). The Court explained that "'collateral estoppel' ... means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, 397 U.S. at 443, 90 S.Ct. at 1194. The petitioner bears the burden of demonstrating that the issue he seeks to foreclose from consideration was necessarily decided in the first trial. Dowling v. United States, 493 U.S. 342,

---

[2]We note that, although the post-conviction court concluded generally that the petitioner received the effective assistance of counsel, the post-conviction court did not explicitly address the petitioner's collateral estoppel issue in its memorandum opinion dismissing the petition for post-conviction relief. Tenn. Code. Ann. 40-30-118(b) (1991) required that the post-conviction court set forth in an order or written memorandum of the case *all* grounds presented and state the findings of fact and conclusions of law with regard to each such ground. However, failure to abide by this requirement does not always mandate a reversal of the post-conviction court's judgment. Rickman v. State, 972 S.W.2d 687, 692 (Tenn. Crim. App. 1997). We conclude that the record of the post-conviction proceedings is sufficient to effectuate meaningful appellate review. Id.

350, 110 S.Ct. 668, 673 (1990). See also Vickers, 985 S.W.2d at 7-8 ("the burden is on the appellant to prove by clear and convincing evidence that, in the earlier trial, the court or a jury necessarily decided the issue of fact which is an element at issue in the present indictment").

In determining whether the petitioner has met this burden, a court must engage in a two-part inquiry. See, e.g., United States v. Gil, 142 F.3d 1398, 1401 (11th Cir. 1998). First, a reviewing court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter ... " in order to see what facts, if any, were necessarily determined by an acquittal at the first trial. Ashe, 397 U.S. at 444, 90 S.Ct. at 1194; Gil, 142 F.3d at 1401. Second, a court must determine whether the previously determined facts constitute an essential element of the prosecution currently under consideration. Gil, 142 F.3d at 1401. If the previously determined facts constitute an essential element of the subsequent prosecution, collateral estoppel will completely bar the subsequent prosecution. Vickers, 985 S.W.2d at 7.

Because the doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy, we initially note that our supreme court has held that the double jeopardy provisions of the state and federal constitutions do not generally preclude a second trial and conviction under the habitual criminal statutes if a defendant is convicted of a second triggering offense. Pearson v. State, 521 S.W.2d 225, 227 (Tenn. 1975). In so holding, our supreme court observed that "the habitual criminal statutes do not create an independent crime, but define and prescribe a status" permitting the enhancement to life imprisonment of the penalty for violating one of the prescribed felonies. Id. Moreover, contrary to the petitioner's argument in his brief, the occurrence of two triggering convictions on the same day followed by dual habitual criminal prosecutions does not generally implicate principles of double jeopardy. Whether a defendant is convicted of two triggering offenses on the same day or on successive days, habitual criminality is a vehicle for the enhancement of punishment, not a separate offense, and jeopardy does not attach. Id. See also Moore v. State, 563 S.W.2d 215, 217 (Tenn. Crim. App. 1977)(citing Pearson and the habitual criminal statutes, this

7

court affirmed two separate, consecutive life sentences imposed following one trial for triggering offenses committed at the same time and place and on the same occasion).

Accordingly, we are directly confronted with the question of whether our supreme court's holding in Pearson precludes application of the doctrine of collateral estoppel to successive habitual criminal prosecutions. We conclude that it does not. "Collateral estoppel applies in criminal proceedings independent of double jeopardy principles, and one need not be twice placed in jeopardy of criminal punishment for collateral estoppel to apply." 50 C.J.S. Judgments § 919(a) (1997). The Seventh Circuit Court of Appeals explained:

> The government's argument assumes that because collateral estoppel is "embodied" in the Double Jeopardy Clause, estoppel is co-extensive with the Double Jeopardy Clause's other protections. Thus, the government asks us to hold that collateral estoppel can never apply in circumstances where double jeopardy does not. Such a holding would eliminate collateral estoppel from criminal cases and overrule Ashe. A criminal defendant has no need for the benefits of issue preclusion if his entire prosecution is barred by double jeopardy ... . *Precisely contrary to the government's assertion, collateral estoppel is applicable in criminal cases only when double jeopardy is not.*

United States v. Bailin, 977 F.2d 270, 275 (7th Cir. 1992)(emphasis added). See also United States v. Shenberg, 89 F.3d 1461, 1479 (11th Cir. 1996); State v. Butler, 505 N.W. 2d 806, 809 (Iowa 1993); State v. Chase, 588 A.2d 120, 122-124 (R.I. 1991); Ex Parte Tarver, 725 S.W.2d 195, 197 (Tex. Crim. App. 1986). But see United States v. Miller, 797 F.2d 336, 341 (6th Cir. 1986). But cf. Vickers, 985 S.W.2d at 7-8.

Accordingly, relying upon the doctrine of collateral estoppel, the petitioner in this case argues that, in the petitioner's first habitual criminal trial, the jury necessarily determined by its acquittal that the fourteen prior convictions presented by the State did not render the petitioner an habitual criminal. He analogizes his case to Ashe, arguing that the single, dispositive, factual issue before the jury during the first trial was whether the petitioner possessed the requisite number of *prior* convictions. Thus, according to the petitioner, it makes no difference that the triggering offense in

8

each habitual criminal proceeding was different. The jury's acquittal following the first habitual criminal trial collaterally estopped the State's prosecution of the second count using the same prior convictions.[3]

In Ashe, three or four masked men robbed at gunpoint six men engaged in a poker game. Ashe, 397 U.S. at 437-438, 90 S.Ct. at 1191. The petitioner, along with three other men, was charged with six separate counts of armed robbery of each of the six poker players. Id. at 438, 1191. The State first tried the petitioner for the armed robbery of one of the poker players, and the jury acquitted the petitioner. Id. at 438-439, 1191-1192. Six weeks later, the State tried the petitioner for the armed robbery of another poker player, and the jury returned a guilty verdict. Id. at 439-440, 1192. The Court observed that, at the first trial, the "single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." Id. at 445, 1195. Accordingly, the Court concluded that the petitioner's second trial was precluded by the doctrine of collateral estoppel. Id. The Court further explained that it did not matter that the second trial involved a different victim, because "the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers." Id. Similarly, the petitioner would argue that the name of the triggering offense in his case had no bearing upon the issue of whether he possessed a sufficient number of prior convictions to be an habitual offender.[4]

Thus, we must determine if the *only* factual issue before the jury at the first habitual criminal trial, which resulted in an acquittal, was the number of the petitioner's prior convictions under

---

[3]If the petitioner had been convicted following the first habitual criminal trial, the State could have relied upon the same prior convictions in successive habitual criminal prosecutions, consistent with the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Tennessee Constitution. Pearson, 521 S.W.2d at 228.

[4]While the petitioner claims that this was the sole issue at the first habitual criminal trial and that the same evidence was presented in both habitual criminal proceedings, the petitioner did not challenge his prior convictions during the second proceeding. Also, as noted earlier, at the post-conviction hearing the petitioner testified that, at the time of his trials in this case, his record did in fact include the fourteen prior convictions relied upon by the State.

9

the habitual criminal statutes. However, we note that the transcript of the petitioner's first habitual criminal trial is not before this court. Again, under Ashe, 397 U.S. at 444, 90 S.Ct. at 1194, a court must review the record of the prior proceedings in order to determine if the doctrine of collateral estoppel is applicable. The petitioner bears the burden of demonstrating the doctrine's applicability. Dowling, 493 U.S. at 350, 110 S.Ct. at 673; Vickers, 1997 WL 370357, at *5. The petitioner also carries the burden of ensuring that the record on appeal conveys a fair, accurate, and *complete* account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b). See also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1997). The failure to do so ordinarily results in a waiver of such issues. Id.

The deficiency of the record was addressed at the post-conviction hearing. At the hearing, the State speculated that during the petitioner's first habitual criminal proceeding the jury was confused about whether larceny, in contrast to receiving stolen property, could trigger the habitual criminal statutes pursuant to Tenn. Code. Ann. § 39-1-802 (Repealed November 1, 1989)(listing the offenses which trigger the habitual criminal statutes). In other words, the State asserted that the jury's acquittal following the first trial was based upon a legal issue unrelated to the legal and factual issues presented during the second habitual criminal proceeding. The petitioner's post-conviction attorney responded:

> Judge, as to that explanation, obviously, I wasn't there, and that is not
> a part of the record in these cases or part of the transcript that was
> prepared, because he wasn't appealing from that proceeding. So, if
> the Court is going to consider that, I wasn't aware that was going to
> be the argument that there was a legal technicality as to why they
> acquitted on one, but not the other. I would ask that first proceeding
> be transcribed, if in fact that is what the Court is going to rely on.

The State then conceded that the record of the prior proceeding would not confirm or refute the State's theory. With respect to the State's theory, the post-conviction court merely observed, "[T]hat is one feasible explanation. There may be others. I mean, who knows what the jury was thinking." On the basis of this exchange, petitioner's post-conviction counsel did not pursue supplementation of the record.

10

As noted earlier, however, the petitioner did testify at the post-conviction hearing that the parties presented the same evidence and the same arguments during both habitual criminal proceedings. The State did not contest the petitioner's assertion. The record of the second proceeding *is* before this court. However, we conclude that the petitioner's testimony is alone insufficient to satisfy his burden to demonstrate that, in the earlier trial, the jury necessarily decided an issue of fact. Dowling, 493 U.S. at 350, 110 S.Ct. at 673; Vickers, 1997 WL 370357, at *5.

Moreover, we reject any assertion that, under the particular circumstances of this case, the record is sufficient as it stands, because the only factual issue that is ever before the jury in an habitual criminal proceeding is whether a defendant possesses the requisite number of predicate convictions. See 39-1-801 (Repealed 1989). See also Moultrie v. State, 584 S.W.2d 217, 219 (Tenn. Crim. App. 1978)("[t]he only function of the jury in such cases is to hear proof on prior convictions of a defendant, upon charges constituting felonies under the statute, and to determine if a defendant's record of recidivism warrants enhanced punishment as prescribed"). In other words, we reject the argument that a jury's acquittal of a defendant on a charge of habitual criminality will *per se* collaterally estop the State from prosecuting a second habitual criminal charge if the State relies upon the *exact* same prior convictions in both proceedings.

In an habitual criminal proceeding, a jury is in fact confronted with more than one factual issue. The applicable pattern jury instructions provide that, in order to find that a defendant is an habitual criminal, a jury must find the following essential elements beyond a reasonable doubt:

1.      the defendant has been convicted of at least three
        felonies ... prior to conviction for the present offense;

2.      at least three of the prior felony convictions were for
        separate offenses, committed at different times, and
        on separate occasions;

3.      not less than two of these three prior convictions
        were for the crimes of (name crimes charged) ... ;

4.      the defendant was charged in the present indictment

11

> with the commission of the crime of (name crime),
> and was convicted of it;
>
> 5.    the defendant must have been charged with being an
>        habitual criminal in a separate count of the present
>        indictment.

T.P.I. Crim. No. 32.01 (1988)(footnotes omitted). The first three elements relate to the validity of the prior convictions under the habitual criminal statutes. However, the jury must also find that the petitioner was convicted of the triggering offense and that the habitual criminal charge was contained in a separate count of the indictment. While these two factual issues would rarely, if ever, be disputed, it is conceivable that a jury could lawfully return a verdict of acquittal despite its finding that a defendant possessed the requisite number of prior convictions under the habitual criminal statutes.

The Supreme Court in Ashe, 397 U.S. at 444, 90 S.Ct. at 1194, warned against a technically restrictive application of the doctrine of collateral estoppel. See also United States v. Leach, 632 F.2d 1337, 1340 (5th Cir. 1980)(the mere fact that a jury could technically have acquitted the defendant without resolving the factual issue asserted by the defendant did not bar the application of the doctrine of collateral estoppel). Nevertheless, in the absence of the record of the first habitual criminal proceeding, we decline to apply the doctrine in this case.

Additionally, the record before this court suggests that the petitioner's defense counsel was effectively permitted to argue jury nullification in the petitioner's first three habitual criminal trials. A defendant may not essentially argue to the jury at trial that it should ignore the facts because the law is unfair and then on appeal in a subsequent case contend that the jury's acquittal necessarily decided a factual issue. Cf. State v. Blache, 480 So.2d 304, 309 (La. 1984)(if the acquittal in the first trial had been against the weight of the evidence, the jury's exercise of its power of nullification might have precluded application of the doctrine of collateral estoppel). Contrast Gil, 142 F.3d at 1401 n. 4 (the possibility of jury nullification cannot enter into the analysis of courts making collateral estoppel

12

inquiries); <u>Leach</u>, 632 F.2d at 1341 (a court should not consider the possibility of jury nullification in applying the doctrine of collateral estoppel). In any case, for the reasons set forth above, this issue is without merit.

**B.    Jury Instructions**

The petitioner next complains that the trial court's instructions to the jury during the second habitual criminal proceeding shifted the burden of proof to the petitioner, thereby violating his right to due process.[5]    The trial court instructed the jury:

> Records of prior convictions of the defendant are evidence which you may consider of only as proof that he is in fact an habitual criminal as that term has been defined above. A judgment of conviction of any person under the same name as that of the defendant creates an inference that the identity of such person is the same as the defendant.

The petitioner cites our supreme court's decision in <u>Lowe v. State</u>, 805 S.W.2d 368 (Tenn. 1991), in support of his argument.

The State contends, in turn, that the petitioner has waived this argument due to his failure to raise this issue on appeal.    However, the supreme court's decision in <u>Lowe</u> was issued on February 25, 1991. The petitioner was convicted of being an habitual criminal on February 8, 1989, and this court affirmed his convictions and sentences on March 22, 1990. This court has previously held that, under these circumstances, this issue remains a viable ground for post-conviction relief. See, e.g., <u>Jones v. State</u>, 891 S.W.2d 228, 230 (Tenn. Crim. App. 1994); <u>Hopson v. State</u>, No. 03C01-9212-CR-00449, 1993 WL 360719, at *2 (Tenn. Crim. App. at Knoxville, September 10, 1993). <u>But see</u> <u>Jones</u>, 891 S.W.2d at 231-232 (Tipton, J., concurring)(opining that this ground for relief was available well before the supreme court's decision in <u>Lowe</u>). In any case, this issue is without merit.

Tenn. Code. Ann. § 39-1-804 (Repealed November 1, 1989), provided:

---

[5]The post-conviction court additionally neglected to address this issue in its memorandum opinion dismissing the petition for post-conviction relief.

> [A] judgment of conviction of any person in this state, or any other state, country or territory, under the same name as that by which such person is charged with the commission, or attempt at commission, of a felony under the terms of this chapter, shall be prima facie evidence that the identity of such person is the same.

In Lowe, 805 S.W.2d at 371, the Supreme Court held that the trial court's instruction to the jury pursuant to this section impermissibly shifted the burden of proof to the defendant in violation of due process. However, the supreme court declined to strike down the statutory provision as unconstitutional per se, further holding that a jury instruction pursuant to this statutory provision could pass constitutional muster if phrased in terms of a permissive inference. Id.

> In this case the trial court offered the following explanation to the jury:

> The Court has charged the jury concerning a certain inference that the jury may make in regard to certain evidence in this case. However, the jury is not required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by all the evidence in the case warrant the inference which the law permits the jury to draw.

> The inference may be rebutted by direct or circumstantial evidence, or both, whether it exists in the evidence of the State or is offered by the defendant, and the burden of proof remains, as always, upon the State to prove beyond a reasonable doubt each and every element that constitutes the offense before the defendant can be convicted.

> Although not required by law to do so, when the defendant offers proof of an explanation to rebut the inference thus raised, you should consider such proof, along with all the evidence, to determine not only the correctness of the inference, but the reasonableness of the defendant's explanation.

> You are not bound to accept either and, as aforesaid, the burden of proving guilt of the offense charged beyond a reasonable doubt is upon the State.

We conclude that the trial court's instructions to the jury satisfied the due process requirements of both the federal and state constitutions.

C.     Closing Argument

The petitioner further argues that, in the second habitual criminal proceeding, the

14

actions of the trial court and the prosecutor during closing arguments denied the petitioner a closing argument, prejudiced the jury, and shifted the burden of proof to the petitioner, thereby denying the petitioner the effective assistance of counsel, due process, and a fair trial. Again, the petitioner failed to raise this issue on direct appeal and now alleges that his appellate counsel's omission constituted ineffective assistance. In order to evaluate the prejudicial impact of appellate counsel's performance, we will address the merits of this issue. Henley, 960 S.W.2d at 580.[6]

The petitioner specifically contends that the trial court erroneously precluded his attorney from making the following arguments in closing:

> Ladies and gentlemen, you looked at the records that were entered. Everyone of these offenses occurred in 1981. The record is silent on any offenses on him other than this receiving stolen property that he was convicted on in November of 1987.
>
> * * *
>
> Ladies and gentlemen, there are lots of things that you can use to look at in this matter - the records that have been entered here - and you can use your own sense of freedom, justice, and fair play in this. Ladies and gentlemen, I ask you: Is it fair for a person to be sentenced to serve a life sentence?

He asserts that, because he was precluded from making the above arguments, "the court and state deprived [the petitioner] of *any* meaningful closing argument ... ." In connection with his claim that he was denied a closing argument, the petitioner also contends that the prosecutor's objection to his closing argument constituted prosecutorial misconduct. Moreover, the petitioner contends that, in light of the limitations placed upon his closing argument, the State's rebuttal argument was improper. Finally, the petitioner argues that the conduct of the prosecutor and the trial court shifted the burden of proof to the petitioner, denying him due process of law.

Following the post-conviction hearing, the post-conviction court made the following

---

[6]We note that, with respect to this issue, the petitioner's brief contains inadequate citation to authority pursuant to Tenn. R. App. P. 27 and Ct. of Crim. App. Rule 10, rendering the task of this court more difficult. Generally, this deficiency results in waiver of the issue before this court. Ct. of Crim. App. Rule 10(b). Nevertheless, in the interests of justice and in order to afford the petitioner a full hearing, we will address the merits of this issue.

findings of fact and conclusions of law:

> The gravamen of [the petitioner's] complaint in this prosecution for habitual offender status was that his lawyer was not allowed to argue that it was unfair to sentence this individual to prison for life for a relatively minor felony offense; that is, receiving stolen property.
>
> The record, of course, establishes that he had the requisite number of previous convictions to place him in the status of being an habitual offender, and under the law in effect at the time, he was eligible to be considered an habitual offender.
>
> His lawyer had successfully, on two prior occasions, argued to a jury that this was the only offense that he had had in a number of years; that it was a relatively minor offense, and that they should not send Mr. Craigmire to prison for the rest of his life for this offense of receiving stolen property.
>
> Those trials ended in a mistrial. He was retried then in 198[9] before Judge Nichols. At the urging of [the prosecutor], the Court admonished [defense counsel] not to make, basically, a jury-nullification argument.
>
> During the course of [defense counsel's argument] ... objections were made by the State and, apparently, sustained by the Court, although we do not have the benefit of the bench conference that took place. We do not have that on record. But I think everybody would agree that the Court admonished him and threatened even to hold him in contempt, if he continued in that argument.
>
> The argument, essentially, was that it just was not fair to send this man to prison for the rest of his life for committing what would amount to, basically, a class-E felony. For what its worth, my personal opinion is that he probably shouldn't get life in prison for committing a class-E felony. But that was not the law in effect at the time.
>
> It is clear to me, in reviewing the cases, that it is not appropriate to argue jury nullification to the jury. ... I would not allow him to argue that they were allowed to disregard the law, but I think I would have allowed him to argue that this was a relatively minor offense. But, in essence, he got to do that during his closing argument, although it was very brief.
>
> In conclusion, I am of the opinion that there was not denial of due process. There was no denial of effective assistance of counsel in this case.

These findings of fact are conclusive on appeal unless this court finds that the evidence preponderates against the findings of the post-conviction court. Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1997).

### i. Denial of Closing Argument

As noted earlier, the petitioner contends that the trial court effectively denied him a closing argument by sustaining the State's objections during his attorney's presentation. In Herring v. New York, 422 U.S. 853, 858, 95 S.Ct. 2550, 2553 (1975), the United States Supreme Court held that the right to the assistance of counsel includes the right of counsel for the defense to make a closing summation to the jury. See also Patty v. Bordenkircher, 603 F.2d 587, 589 (6th Cir. 1979)(the trial court's refusal to permit defense counsel in an habitual criminal trial to make a final argument constituted a denial of the right to counsel). A trial court's refusal to permit closing argument is reversible error per se. See, e.g., United States v. Davis, 993 F.2d 62, 64 (5th Cir. 1993)("[g]iven the difficulty of determining the prejudicial impact of the failure to afford summation, the denial of a request for it is reversible error per se); Patty, 603 F.2d at 589 (the rule announced in Herring is a per se rule, precluding harmless error analysis); United States v. Bowden, 579 F. Supp. 337, 343 (M.D. Tenn. 1982), affirmed, 723 F.2d 911 (1983)("it would have been reversible error per se to have denied [the defendant] an opportunity to make any closing argument at all").

However, the Court in Herring, 422 U.S. at 862, 95 S.Ct. at 2555, also observed:

> This is not to say that closing arguments in a criminal case must be
> uncontrolled or even unrestrained. The presiding judge must be and
> is given great latitude in controlling the duration and limiting the scope
> of closing summations. He may limit counsel to a reasonable time
> and may terminate argument when continuation would be repetitive or
> redundant. He may ensure that argument does not stray unduly from
> the mark, or otherwise impede the fair and orderly conduct of the trial.
> In all these respects he must be given broad discretion.

See also State v. Nesbit, 978 S.W.2d 872, 900 (Tenn. 1998), cert. denied, 1999 WL 181566 (U.S. 1999)(trial courts are accorded wide discretion in controlling closing arguments). Thus, in Bowden, 579 F. Supp. at 343-344, the federal district court denied the defendant's motion for new trial, concluding that the court had properly forbidden defense counsel from "arguing the law" during closing argument. The court observed:

> "Because it is the court's function and duty to instruct the jury on the
> controlling law [it is] the better practice ... , of course, ... that any

17

> arguments of this type be limited solely toward demonstrating how the evidence, or reasonable inferences therefrom, conform to the law ... ."

Id. at 344 (citation omitted).

It is apparent from the record in this case that the trial court similarly limited defense counsel to arguing how the evidence or reasonable inferences therefrom conformed to the law. It is equally apparent in this case that there was no question that the petitioner possessed the requisite number of prior convictions to establish his status as an habitual criminal and that the State otherwise adduced sufficient proof at trial to support all the elements of the charged offense. Accordingly, as noted by the post-conviction court, the petitioner's real complaint is that, because he was in fact guilty of being an habitual offender, he was left with nothing to argue in closing except jury nullification, which argument the trial court prohibited.

### ii. Jury Nullification

In other words, despite the petitioner's protestations, we agree with the post-conviction court that the excluded argument constituted an attempt by defense counsel to prompt jury nullification. As noted earlier, the State was required to establish beyond a reasonable doubt that the petitioner had been convicted of a triggering offense; the habitual criminal charge was contained in a separate count of the indictment; and the petitioner had previously been convicted of three felonies, as prescribed by statute. Tenn. Code. Ann. § 39-1-801 to -803 (Repealed November 1, 1989). Therefore, the defense attorney's references to the number of intervening years between the prior convictions and the triggering offense and the absence of additional offenses during those intervening years were not relevant to any issue at the habitual criminal trial other than the possibility of nullification. Rather, defense counsel was clearly attempting to argue that the petitioner had not committed a crime in several years and that, therefore, the jurors should exercise compassion notwithstanding the harsh mandates of the habitual criminal statutes.[7] Similarly, defense counsel's

---

[7]Following the petitioner's habitual criminal trial, the trial court observed that he had sustained the prosecutor's objection to defense counsel's statement concerning the silence of the record on

18

query to the jury concerning the fairness of imposing a life sentence was, in the context of this case and in light of defense counsel's failure to point to any deficiency in the proof, an invitation to the jury to exercise its de facto power of nullification.

A trial court not only has the discretion to control closing argument but a duty to prevent improper argument. Arguments by counsel must be based upon the evidence introduced at trial. State v. Tate, No. 02C01-9605-CR-00164, 1997 WL 746441, at *10 (Tenn. Crim. App. 1997). Moreover, confusing or irrelevant arguments should not be permitted. Id. On the basis of these guidelines and the following discussion, we conclude that the trial court correctly prohibited defense counsel from arguing jury nullification. To the extent that defense counsel's argument was further limited by the evidence adduced at trial, this limitation was certainly no fault of the trial court.

A defendant does not possess a constitutional right, whether pursuant to the due process provisions of the state and federal constitutions or embodied in those documents' guarantees of a right to a trial by an impartial jury, to place the issue of jury nullification before a jury in a criminal trial. Thus, Tennessee courts have upheld refusals by trial courts, in response to defendants' requests, to inform juries that they may disregard the applicable law in reaching a verdict. See, e.g., State v. Taylor, 771 S.W.2d 387, 397 (Tenn. 1989); Janow v. State, 567 S.W.2d 483, 485 (Tenn. Crim. App. 1978). Moreover, in State v. West, No. 182, 1988 WL 13559, at *1 (Tenn. Crim. App. at Knoxville, February 22, 1988), a case arising under the habitual criminal statutes, this court additionally rejected the propriety of evidence and argument by a defendant concerning jury nullification:

> [D]efendants sought to have the jury determine that they were not deserving of a life sentence even though the record clearly shows they were habitual criminals as defined by statute. In effect the defendants wanted to convince the jury by irrelevant evidence,

offenses committed during the intervening years, because the statement was misleading. The trial court noted that, at the time of his habitual criminal trial, the petitioner was being prosecuted for offenses committed during the intervening years, including grand larceny, possession of a controlled substance, and burglary. We conclude that the trial court's limitation of closing argument on this basis was not unduly restrictive. As noted subsequently, the petitioner *was* permitted to argue briefly that the prior convictions occurred in 1981 and the triggering offense occurred in 1987. Furthermore, the absence of intervening criminal conduct was only relevant to the possibility of jury nullification.

19

> instruction, and argument to ignore relevant facts, law, and evidence
> and to return a not guilty verdict in this phase of the trial. This is not
> proper ... .

Again, in State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993), this court noted that "a trial court cannot be held in error for prohibiting a defendant from advising a jury not to follow the law as the trial court instructs it."

This issue is often articulated in terms of a limitation upon juries' rights notwithstanding their de facto power of nullification. In Wright v. State, 394 S.W.2d 883 (Tenn. 1965), another case arising under the habitual criminal statutes, five jurors filed affidavits following the defendant's conviction stating that they felt the defendant's prior convictions were not serious enough to make the defendant an habitual criminal. Id. at 884. They explained that they had voted to convict the defendant, because, as they understood the charge of the court, if the defendant had been convicted of crimes as defined in the habitual criminal statutes, there was nothing else for them to do. Id. at 885. The Supreme Court responded, "As a matter of fact they didn't have the *right* to disregard what the legislature had defined as making an habitual offender." Id. at 885 (emphasis added). Just as the jury's de facto power of nullification is not a "right" of the jury, the power confers no constitutional rights upon defendants.

Tennessee case law is consistent with the early United States Supreme Court case of Sparf v. United States, 156 U.S. 51, 15 S.Ct. 273 (1895). In that case, Justice Harlan stated:

> [U]pon principle, where the matter is not controlled by express
> constitutional or statutory provisions, it cannot be regarded as the
> right of counsel to dispute before the jury the law as declared by the
> Court....[8] We must hold firmly to the doctrine that in the courts of the
> United States it is the duty of juries in criminal cases to take the law
> from the court, and apply that law to the facts as they find them to be
> from the evidence.

---

[8] The state constitutions of Indiana and Maryland provide that jurors are judges of law and fact. Therefore, trial courts in those states instruct jurors on the "prerogative" of nullification and presumably defense counsel argues accordingly. People v. Douglas, 680 N.Y.S. 2d 145, 150 n.1 (N.Y. App. Div. 1998).

* * *

> Under any other system, the courts, although established in order to declare the law, would for every practical purpose be eliminated from our system of government as instrumentalities devised for the protection equally of society and of individuals in their essential rights. When that occurs our government will cease to be a government of laws, and become a government of men. Liberty regulated by law is the underlying principle of our institutions.

Id. at 102-103, 293 (footnote added).

Other jurisdictions have applied this principle in addressing the question of whether a defendant possesses a constitutional right to propose nullification to a jury during closing argument. Thus, in Medley v. Commonwealth, 704 S.W.2d 190, 191 (Ky. 1985), a Kentucky court held that, in a prosecution under Kentucky's persistent felon statute, a defendant did not have the right to argue in closing that the jury could disregard the law if it believed that the minimum penalty was too severe. In United States v. Brown, 548 F.2d 204, 210 (7th Cir. 1977), the Seventh Circuit Court of Appeals held that the trial court properly precluded defense counsel from addressing in closing argument the historical role of the jury as the conscience of the community. The court observed that allowing this argument in the context of that case "would have been an invitation to the jury to disregard the instructions of the court; as such it was clearly improper." Id. In United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993), the First Circuit Court of Appeals observed:

> [W]hile jurors may choose to flex their muscles, ignoring both law and evidence in a gadarene rush to acquit a criminal defendant, neither the court nor counsel should encourage jurors to exercise this power. ... A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.
>
> ... To the extent that appellants, during closing argument, managed to mention nullification, they received more than was their due.

See also People v. Moore, 662 N.E.2d 1215, 1231 (Ill. 1996)(a defendant has no right to argue nullification to the jury); State v. Bjerkaas, 472 N.W.2d 615, 620 (Wis. Ct. App. 1991)(a defendant has no right to encourage jury nullification during closing argument).

21

In any case, as noted by the post-conviction court, the petitioner was effectively permitted to argue nullification, albeit briefly. Defense counsel argued the following without objection:

> Ladies and Gentlemen, you are the sole triers of the facts and circumstances of this case. You have to go back there and deliberate, and make up your minds whether Mr. Craigmire is to receive a life sentence for receiving stolen property, or whether he is to be allowed to be sentenced by Judge Nichols. Sentence between three and ten years in the State pentitentiary.
>
> * * *
>
> Ladies and gentlemen, all these things happened in 1981. Then he is convicted of receiving stolen property in 1987. Ladies and Gentlemen, three to ten years in the State Penitentiary is enough for anyone to serve for a receiving stolen property.

Thus, contrary to the petitioner's argument, he received "more than was [his] due." We conclude that the trial court's limitations upon the petitioner's closing argument did not deprive the petitioner of the effective assistance of counsel, due process, or a fair trial by an impartial jury.

### iii. Prosecutorial Misconduct

In a similar vein, the petitioner also challenges the prosecutor's objection to defense counsel's query, "Is it fair for a person to be sentenced to serve a life sentence?" In the jury's presence, the prosecutor argued to the court that '[t]he jury has no right to ignore the law in this particular case. . . . That is exactly what Mr. Bryant is asking them to do." Having already concluded that the petitioner's argument constituted an appeal for jury nullification, we decline to find that the prosecutor engaged in misconduct by objecting to the argument. Defense counsel opened the door to the prosecutor's objection with his improper argument. See, e.g., State v. Duke, No. 89-74-III, 1989 WL 111204, at *4 (Tenn. Crim. App. at Nashville, September 27, 1989).

Additionally, even assuming that the petitioner established prosecutorial misconduct, he was still required to demonstrate to the post-conviction court that the improper conduct prejudicially affected the verdict in his case. Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965); Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). The petitioner argues that the prosecutor's

22

statement that the jury "has no right to ignore the law" and the trial court's curative instruction effectively directed a verdict of guilt. In response to the prosecutor's objection, the trial court instructed the jury:

> Ladies and gentlemen, I would instruct you: You are to have no sympathy and prejudice. Look alone to truth and justice, and a fair verdict rendered, according to the law and the evidence as presented. That is what you are to base your decision on. I will tell you here in just a few minutes.
>
> Proceed.

First, we note that both the prosecutor's objection and the trial court's instruction were correct statements of the law. In State v. Williamson, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995)(citation omitted), this court observed that it is, in fact,

> the duty of the jury to apply the law contained in the charge of the trial court to the ultimate facts determined by the jury. ... "It is the duty of the court to direct the jury what the law is, and it is the duty of the jury to apply it, under the direction of the court, ... to the facts in evidence. They must treat it as applicable to the facts, and apply it as they determine the facts to be."

Second, it is undisputed that the State overwhelmingly proved the petitioner's habitual criminal status. Thus, the only way in which the prosecutor's objection and the ensuing instruction could have prejudiced the petitioner was by inhibiting the jury in the exercise of its de facto power of nullification. We have already concluded that the petitioner possesses no right to jury nullification nor does the jury possess any right to disregard the instructions of the trial court as to the applicable law.

Similarly, we do not agree that the prosecutor's own reference to fairness during his rebuttal argument constituted misconduct or prejudicially affected the verdict in the petitioner's case. The prosecutor argued in rebuttal:

> [Defense counsel] would say: Is it fair to sentence him for that? Well, was it fair for him to victimize all these people, or do we have a responsibility? We have a responsibility to follow the law, our oath, our responsibility to members of the community, so that there are people other than victims in these cases.

23

We initially note that the petitioner did not object to the State's rebuttal argument at trial. Moreover, the prosecutor was again responding to the petitioner's jury nullification argument. The bounds of proper argument are established by the facts in evidence, the character of the trial, and the conduct of opposing counsel. State v. Seay, 945 S.W.2d 755, 763 (Tenn. Crim. App. 1996). See also Nesbit, 978 S.W.2d at 901. Within these bounds, the prosecution may point out the gravity of a particular crime and emphasize the importance of law enforcement. Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). Applying these standards, the prosecutor's rebuttal argument was appropriate and did not deprive the petitioner of due process and a fair trial. Moreover, as noted above, the prosecutor's statements did not prejudicially affect the outcome of the petitioner's trial.

### iv. Burden of Proof

Finally, the petitioner asserts that, generally, the conduct of the prosecutor and the trial court during closing arguments shifted the burden of proof to the petitioner. In essence, the petitioner argues that, because the prosecutor and the trial court informed the jury that it must apply the law as instructed by the trial court to the facts as found by the jury, he was denied due process. We simply note that courts have upheld similar jury instructions. For example, in United States v. Kyzyske, 836 F.2d 1013, 1021 (6th Cir. 1988), in response to jurors' inquiries during deliberation concerning nullification, the court responded:

> There is no such thing as valid jury nullification. Your obligation is to follow the instructions of the Court as to the law given to you. You would violate your oath and the law if you wilfully brought in a verdict contrary to the law given to you in this case.

Id. The Sixth Circuit Court of Appeals, noting the trial court's duty to uphold the law and to apply it impartially, concluded that the instruction was appropriate. See also United States v. Boardman, 419 F.2d 110, 116 (1st Cir. 1969)("jurors may have the power to ignore the law, but their duty is to apply the law as interpreted by the court, and they should be so instructed"); United States v. Dougherty, 473 F.2d 1113, 1131-1138 (D.C. Cir. 1972)(the existence of the de facto power of jury nullification has co-existed for many years with the legal practice and precedent upholding instructions to the jury that they

24

are required to follow the instructions of the court on the law and apply the law to the facts); Farina v. United States, 622 A.2d 50, 61 (D.C. Ct. App. 1993)(an instruction that the jury must find the defendant guilty if it finds that the government has proven every element of the offense beyond a reasonable doubt is not a directed verdict); People v. Douglas, 680 N.Y.S.2d 145, 151 (N.Y.App.Div. 1998)(because courts have a duty to prevent improper nullification conduct, the trial court properly instructed the jury of its duty to convict the defendant if the State had proven the elements of the crime beyond a reasonable doubt); State v. Meggyesy, 958 P.2d 319, 321-322 (Wash. Ct. App.), review denied, (Wash. 1998)(trial courts do not invade the province of the jury or otherwise violate a defendant's right to trial by jury in instructing juries that it is their duty to return a verdict of guilt if they find that each element of a crime has been proven beyond a reasonable doubt). But see State v. Lowrence, No. 1, 1991 WL 44219, at **3-4 (Tenn. Crim. App. at Jackson, April 3, 1991)(the court noted that it found no authority for a trial judge to instruct the jury that it has "no option" but to follow the law).

We conclude that attempts by the prosecutor and the trial court to prevent defense counsel from encouraging jury nullification did not shift the burden of proof to the petitioner or direct a verdict in this case. Instead, the actions of the prosecutor and the trial court ensured that the jury properly applied the laws of this state, including those pertaining to the burden of proof in a criminal trial. In fact, the trial court repeatedly instructed the jury that the burden of proof rested with the State. Of course, the trial court also instructed the jury that it should base its verdict upon the evidence and the law presented. Contrary to the petitioner's argument, the burden of proof does not shift to a criminal defendant merely because the evidence and the law presented establish his guilt.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court dismissing the petition for post-conviction relief.

_____

Norma McGee Ogle, Judge

CONCUR:

_____

James Curwood Witt, Jr., Judge

_____

John K. Byers, Senior Judge